UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CLAUDE C. LIGHTFOOT, JR.,                            CIVIL ACTION
substituted as Trustee of the Unsecured
Creditors' Trust formed in connection                NO: 07-4833
with the bankruptcy of MBS
                                                     SECTION: "A" (3)


VERSUS


HARTFORD FIRE INSURANCE
COMPANY, ET AL.


## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 106)** filed by

Defendant RSUI Indemnity Company, Inc.  Plaintiff Claude C. Lightfoot, Jr. opposes the

Motion.  The Motion, set for hearing on March 31, 2010, is before the Court on the briefs

without oral argument.  For the reasons that follow, the Motion is **DENIED**.

## I.  BACKGROUND

MBS Management Services, Inc. ("MBS") was a real estate company whose principal

place of business was located in Metairie, Louisiana. Complaint, ¶¶ 1, 9.[1] MBS dealt mainly

with multi-family residential apartment complexes, and its business consisted primarily of

purchasing these complexes, managing them for a period of time, then selling them for a profit.

Plaintiff's Memorandum in Opposition to RSUI Indemnity Company, Inc.'s Motion for

Summary Judgment ("Opposition"), pg. 5. In August of 2005, MBS's real estate portfolio

consisted of seventy properties located mostly in Texas and, to a lesser extent in Florida.

Opposition at pg. 5. MBS's nerve center, however, was located in the Galleria office building in

Metairie, Louisiana. *Id.* MBS's accounts were processed in the Metairie office, and "all

activities regarding the buying and selling of properties were conducted" out of the Metairie

office. *Id.*

MBS retained Scott McLaughlin, an insurance agent employed by Wright & Percy

Insurance Agency ("Wright & Percy"), to procure insurance for MBS covering the 2004-2005

period. Opposition at pg. 6; Complaint at ¶ 28. Mr. McLaughlin apparently testified in his

deposition that since none of Wright and Percy's "standard carriers" were able to insure MBS,

Wright & Percy placed the insurance through another insurance broker, American E & S

Insurance Brokers California, Inc. ("American E & S"). Opposition at pg. 6. The brokers

obtained three layers of insurance for MBS - a primary layer of $10,000,000 from Hartford Fire

Insurance Company ("Hartford"), a secondary layer of $10,000,000 from Homeland Insurance

Company ("Homeland"), and a tertiary layer of $480,000,000 from RSUI Indemnity Company,

---

[1]Unless otherwise noted, the facts recounted herein are drawn from Plaintiff's allegations. The Court
accepts Plaintiff's allegations as true for summary judgment purposes except where they are controverted by RSUI.

Inc. ("RSUI").  Complaint at ¶ 11-13.

In late August of 2005, Hurricane Katrina caused the temporary closure of MBS's Metairie office.  Complaint at ¶ 19.  MBS reopened in Houston on an interim basis, and eventually returned to Metairie "a few days" before November 24, 2005.  RSUI Indemnity Company, Inc.'s Motion for Summary Judgment ("Motion"), pg. 2.  MBS alleges that it incurred significant business interruption losses during this period.  Complaint at ¶ 18.

MBS notified Wright & Percy of the extent of its losses.  *Id.* at ¶ 22.  MBS alleges that Wrigth & Percy "and/or" American E & S failed to take the "necessary steps to collect MBS's business interruption, extra expense, and other insurance claims from Hartford, Homeland and RSUI." *Id.* at ¶ 27.  After its insurers indicated that they would not pay for MBS's business losses, it filed the instant suit, naming the insurers, as well as Wright & Percy and American E & S, as defendants.  *See* Complaint.  Subsequent to filing suit MBS filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff Claude C. Lightfoot, Jr. ("Plaintiff"), the trustee of the Unsecured Creditors' Trust established by MBS's bankruptcy plan, was substituted in for MBS as Plaintiff.  *See Ex Parte* Consent Motion to Substitute Party Plaintiff (Rec. Doc. 101). Plaintiff contends that the insurers' refusal to pay for MBS's business losses forced it into bankruptcy.  Opposition at pg. 2.  RSUI now moves for summary judgment arguing that MBS's insured losses are not sufficient to reach RSUI's tertiary layer of insurance.

## II.  <u>STANDARD</u>

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the

light most favorable to the non-movant," show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. <u>DISCUSSION</u>

The Motion now before the Court concerns the insurance policy RSUI issued to MBS (the "Policy"). RSUI argues that the Policy is a "scheduled policy," meaning that MBS's insured loss is limited to the business interruption value for MBS's Metairie office as listed in the "statement of values" referenced in the Policy. Motion at pg. 8. RSUI contends that the listed business interruption value for MBS's Metairie office is only $100,000, and therefore that Plaintiff's claim for insurance proceeds under the Policy is limited to that amount, which is well-

under the minimum $20,000,000 amount necessary to invoke RSUI's coverage. *Id.* Plaintiff argues in opposition that the Policy is a "blanket policy," meaning that MBS was insured for the total amount of its loss and that the only limit on what it can recover is the total amount of insurance coverage available under the Policy. Opposition at pg. 9. Plaintiff also contends that the document RSUI refers to as the "statement of values" was never intended to place any sort of limit on MBS's insurance coverage.

Both parties agree that Louisiana law governs the interpretation of the insurance policy. The "[i]nterpretation of an insurance policy usually involves a legal question which can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, No. 08-2607, pg. 4 (La. 5/22/09); 12 So.3d 945, 949**,** *citing Bonin v. Westport Ins. Corp.*, 05-886, pg. 4 (La. 5/17/06); 930 So.2d 906, 910. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts under Louisiana law, "which requires judicial determination of the common intent of the parties to the contract." *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001), *citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1994); 630 So.2d 759, 763; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *quoting Cadwallader v. Allstate Insurance Co.*, 848 So.2d 577, 580 (La. 2003). "The parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have a technical meaning." *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 763. An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the

policy.  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 , *quoting* La. R.S. § 22:654 (2004).

An insurance contract should not be interpreted "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion."  *Id., quoting Cadwallader*, 848 So. 2d at 580.  "If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written."  *Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, No. 10-142, pg. 3 (La. App. 3 Cir. 6/9/10); ___ So.3d ___, *citing* La. Civ. Code. Art. 2046.  "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability."  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 208 (alteration omitted), *quoting Carbon v. Allstate Ins. Co.*, No. 97-3085 (La. 10/20/98); 719 So. 2d 437, 440.  Nevertheless, "[i]f an ambiguity remains after applying the general rules of contract interpretation, the ambiguous insurance policy provision is construed against the insurer."  *Berry v. Paul Revere Life Ins. Co.*, 08-945, p. 9 (La. 1 Cir. 7/9/09); 21 So.3d 385; *Westerfield v. LaFleur*, 493 So.2d 600, 605 (La. 1986).  Likewise, "[e]xclusionary provisions in insurance contracts are strictly construed against the insurer."  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 208, *quoting Ledbetter v. Concord Gen. Corp.*, No. 95-0809 (La. 1/6/96); 665 So.2d 1166, 1169.

RSUI argues that the Policy is a scheduled policy and in support of this contention it relies mainly on the following language from the policy:

## SCHEDULED LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

It is understood and agreed that the following special terms and conditions apply to this policy:

1.  In the event of loss hereunder, liability of [RSUI] shall be limited to the least of the following in any one "occurrence":

    a.  The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

    b.  100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with [RSUI], less applicable deductibles and primary and underlying excess limits.  If no value is shown for a scheduled item then there is no coverage for that item; or

    c.  the Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

Policy, Exhibit C in support of Motion.  An "occurrence" is limited to all the damage inflicted by a particular event, such as a hurricane, during a seventy two (72) hour period.  Policy.  RSUI attaches a spreadsheet to its Motion that it claims is the "statement of values" referenced in the Policy, and further states that the business interruption value listed in that document for MBS's Metairie office is a mere $100,000.  Spreadsheet, Exhibit D in support of Motion.  Therefore, RSUI argues, since its coverage is limited to "100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest

Statement of Values," the business interruption coverage for MBS's Metairie office is limited to $100,000. Plaintiff argues that the Spreadsheet was never intended to limit the coverage available under the Policy. Plaintiff asserts that the Spreadsheet was an ever-changing document wherein MBS listed particular property and business interruption values only to permit its insurers to calculate what premiums to charge.

RSUI proffers the affidavit of Charles W. Womack, Chief Claims Specialist for RSUI Indemnity Company, to establish that the Spreadsheet "is the scheduled limit of values on file with the company as referenced in the Scheduled Limit of Liability form" in the Policy. March 25, 2010 Affidavit of Charles W. Womack in support of RSUI's Reply Memorandum in support of its Motion for Summary Judgment. The Spreadsheet is entitled "MBS Management Services, Inc.," and is undated. The column headings in the spreadsheet are illegible, although Plaintiff asserts, and RSUI does not challenge, that the seventh row from the left provides "BI w/ EE" values, which presumably refers to business interruption value. The Spreadsheet provides a $100,000 figure for the business interruption value of MBS's Metairie office. The plain language of the Policy, limiting coverage to "100% of the individually stated value for each scheduled item of property" certainly favors RSUI's contention that its liability does not exceed the listed business interruption value of MBS's Metairie office. It is far from clear, however, that the Spreadsheet places a limit on the business interruption coverage for MBS's Metairie office.

Plaintiff points out that the listed business interruption value for MBS's Metairie office is only $100,000, so that if that value was actually intended by the parties to limit the business

interruption coverage for the office to $100,000, a figure well bellow the $20,000,000 threshold of RSUI's tertiary Policy, RSUI's business interruption coverage for the office was in fact illusory. RSUI retorts that the policy was intended to provide coverage for a number of MBS's properties and that business interruption coverage would be invoked if a particular event, like a hurricane, affected a number of different properties. For example, RSUI states that the aggregate business interruption value of MBS's Houston properties are sufficient to surpass $20,000,000, so that if a hurricane hit Houston, RSUI's business interruption coverage of MBS could trigger. While this is true, it does not directly address Plaintiff's argument. MBS's Metairie office was the only property it owned in Louisiana. So, if RSUI's insurance coverage for the Metairie office was limited to $100,000, a hurricane would have to cause damage to the Metairie office *and* at least $19,900,001 worth of damage to MBS's other property in either Florida or Texas within a seventy two (72) hour period in order to surpass the $20,000,000 threshold and trigger RSUI's business interruption coverage for the office. Also, since the Metairie office was the hub of MBS's business operations, one would assume that it would have business interruption coverage in excess of $100,000.

It would seem that RSUI's interpretation of the Policy would lead to strange results. It is possible, however, that MBS, which presumably was a sophisticated business operation, simply struck a bad bargain for itself, or that it only purchased very limited coverage from RSUI. Even if the Court accepts RSUI's interpretation of the Policy, however, it is clear that the Spreadsheet is not the "scheduled limit of values on file with the company as referenced in the Scheduled Limit of Liability form" because it is inconsistent with the Policy in a number of instances.

The Policy contains a number of endorsements adding properties to the Policy, or changing the values for properties covered by the Policy. A number of these endorsements describe properties that were covered when Katrina struck, but that are not listed in the Spreadsheet. The Policy provides that "[i]f no value is shown for a scheduled item then there is no coverage for that item." Therefore, if the Spreadsheet means what RSUI purports it to mean, then there is no coverage for these properties despite the fact that the Policy itself describes them as covered, and despite the fact that RSUI was evidently collecting premiums for insuring the properties. *See, for example*, Policy, Endorsement No. 5 (referring to a property located at 12041 Dessau Road in Austin, Texas that is not listed on the Spreadsheet). Similarly, the Policy provides property values and business interruption values for two properties located in Houston that are inconsistent with the values provided in the Spreadsheet. *See Id.* at Endorsement No. 3.

Even if RSUI's interpretation is correct that the Policy is a scheduled policy and the coverage for particular properties is limited to the values listed on a "scheduled limit of values," the Court can only assume that the Spreadsheet is not the "scheduled limit of values," or, at least not the scheduled limit of values that was operative at the time MBS's Metairie office was damaged by Katrina.[2] The Spreadsheet is the only evidence RSUI presented to support its contention that MBS only had $100,000 worth of coverage for business interruption losses at its Metairie office. RSUI therefore has not come forward with competent evidence to demonstrate that MBS's covered losses were insufficient to invoke the coverage of the insurance policy RSUI issued in its favor. Plaintiff's claims against RSUI are still viable.

---

[2]RSUI offers no explanation of the discrepancies between the Spreadsheet and the Policy.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 106)**

filed by Defendant RSUI Indemnity Company, Inc. is **DENIED**.

This 9th day of August 2010.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE