UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDE C. LIGHTFOOT, JR., substituted as Trustee of the Unsecured Creditors' Trust formed in connection with the bankruptcy of MBS | CIVIL ACTION |
| VERSUS | NO: 07-4833 |
| HARTFORD FIRE INSURANCE COMPANY, ET AL. | SECTION: "A" (3) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 172)** and a **Motion for Summary Judgment (Rec. Doc. 193)** filed by Defendant Wright & Percy Insurance Agency ("Wright & Percy"). Plaintiff Claude C. Lightfoot, Jr. ("Plaintiff") opposes the Motions. The Motions, set for hearing on September 29, 2010, are before the Court on the briefs without oral argument. For the reasons that follow, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This matter arises out of an insurance dispute concerning coverage under several different insurance policies for losses incurred as a result of Hurricane Katrina. MBS Management Services, Inc. ("MBSMS") was a real estate company whose principal place of business was located in Metairie, Louisiana. (Compl. ¶¶ 1, 9.) MBSMS dealt mainly with multi-family residential apartment complexes. (*Id.* at ¶ 4.) MBSMS was part of a conglomerate of different MBS entities. (Gonzales Aff. Ex. A at 3.) All accounts for the MBS entities were processed in the Metairie office, and "all operations regarding the buying and selling of properties were conducted" out of the

1

Metairie office. (*Id.* at 4.) The MBS entities primarily generated income by purchasing properties, managing them for a period of time, and then selling them for a profit. (*Id.* at 2-3.) In August of 2005, the real estate portfolio for the MBS entities consisted of seventy properties located mostly in Texas and, to a lesser extent in Florida. (*Id.* at 3.) With the exception of MBSMS, the entities comprising MBS only existed on paper. (*Id.*) MBS Realty Investors, Ltd. ("MBSRI"), an entity of MBS, earned income through the buying and selling of properties. (Pl.'s Mem. Opp'n to Def.'s Mem. Supp. Mot. Summ. J. 11.) All income generated by MBSRI ultimately flowed to MBSMS, and MBSRI paid many expenses for MBSMS. (*Id.* at 11-12.)

Plaintiff alleges that prior to Hurricane Katrina MBSMS contacted a retail insurance broker, Wright & Percy, which is a division of Bancorp South Insurance Services, Inc., to procure insurance on its behalf. (Compl. at ¶ 15.) Brent Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, was in charge of purchasing insurance for MBSMS, although he had to seek ultimate approval of MBSMS's insurance contracts from Michael B. Smuck, Sr., MBSMS's President and Chief Executive Officer. (Couture Dep. 12:4-7; 29:11-23; 32:11-24, October 30, 2008.) Mr. Couture's main contact at Wright & Percy was Scott McLaughlin. (*Id.* at 184:10-13.) In discussing MBSMS's insurance needs with Mr. McLaughlin, Mr. Couture never asked for business interruption insurance covering lost opportunities to buy or sell property. (*Id.* at 48:11 - 49:14.) Indeed, Mr. Couture testified that he never thought of purchasing such insurance coverage.[1] (*Id.*) Mr. McLaughlin recommended that Mr. Couture purchase business interruption and extra expense coverage for the Metairie office. (Def.'s Mem. Supp. Mot. Summ. J. 3.) Plaintiff

---

[1] Mr. Couture also testified that he never asked Mr. McLaughlin to provide business interruption coverage for brokerage commissions relating to the purchase and sale of properties. (Couture Dep. 53:24 - 54:7.)

2

also asserts that MBSMS provided Wright & Percy with a binder detailing the coverage needed for all MBS entities. (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 10-11.)

After meeting with Mr. Couture, Mr. McLaughlin reached out to Michelle Goldman, a property broker with American E & S Insurance Brokers California, Inc. ("E & S"), to obtain insurance coverage for MBSMS. (Goldman Dep. 8:18-21, June 17, 2010; McLaughlin Dep. 124:11-24, August 28, 2009.). E & S is a wholesale broker, meaning that it places insurance on behalf of retail brokers when those retail brokers are unable to access adequate insurance markets. (Goldman Dep. 8:22-9:5.) Following the discussions between Mr. Couture and Mr. McLaughlin, and Mr. McLaughlin and Ms. Goldman, Plaintiff alleges that Wright & Percy "and/or" E & S obtained three layers of insurance for MBSMS - a primary layer of $10,000,000 from Hartford Fire Insurance Company ("Hartford"), a secondary layer of $10,000,000 from Homeland Insurance Company ("Homeland"), and a tertiary layer of $480,000,000 from RSUI Indemnity Company, Inc. ("RSUI"). (Compl. at ¶¶ 11-13.) Mr. McLaughlin then delivered the Hartford, Homeland, and RSUI policies to MBSMS in December of 2004. (Def.'s Second Mem. Supp. Mot. Summ. J. 3.) Mr. Couture kept a copy of the policies in his office. (Couture Dep. 82:3-7.)

Plaintiff alleges that when Hurricane Katrina struck Southeast Louisiana on August 29, 2005, it caused significant damage to MBSMS's Metairie office and caused MBSMS to sustain considerable business interruption losses, mostly due to lost opportunities to acquire and dispose of property. (Compl. at ¶¶ 19-22.) Plaintiff further alleges that MBSMS notified Wright & Percy of its losses and that Wright & Percy failed to take the "necessary steps to collect [MBSMS's] business interruption, extra expense, and other insurance claims from Hartford, Homeland and RSUI." (*Id.* at ¶¶ 22, 27.) Plaintiff also alleges that Wright & Percy had an economic incentive to minimize

MBSMS's claims because Wright & Percy received a fee from the insurance carriers if the premiums collected exceeded the amount of benefits remitted on the policies procured from the insurance carriers by Wright & Percy. Mr. Couture, however, testified that after MBSMS's insurance claim was submitted, he determined that MBSMS's covered losses would not exceed the deductible on its primary layer of insurance with Hartford, and authorized Mr. McLaughlin to tell Hartford "that the claim was being withdrawn." (Couture Dep. 90:5 - 91:12.)

After its insurers indicated that they would not pay for MBSMS's business losses, MBSMS filed the instant suit in August of 2007, naming the insurers, as well as Wright & Percy and E & S, as defendants. (*See* Compl.) The Complaint levels several charges against Wright & Percy. It alleges that Wright & Percy engaged in unfair trade practices because of its economic incentive to suppress the claims submitted to the insurers from whom it obtained insurance and its failure to disclose this arrangement. (Compl. at ¶¶ 53-70.) Plaintiff also alleges that Wright & Percy is liable for fraud because it (1) represented to MBSMS that it had "full coverage for its business income losses, as well as extra expenses and other items of losses and damages associated with Hurricane Katrina," (2) had an economic incentive to suppress MBSMS's claims; (3) colluded with the insurers to suppress MBSMS's insurance claims; and (4) retired MBSMS's insurance claims without authorization. (*Id.* at ¶¶ 70-78.) Finally, Plaintiff alleges that Wright & Percy is liable for "negligence, breach of contract, breach of fiduciary duty and misrepresentation" because it represented to MBSMS that MBSMS's claims did not exceed policy deductibles, and because it failed "to procure adequate insurance coverage with sufficient limits to cover MBSMS for all of its potential business income losses, including income losses, additional operating expense losses and extra expenses." (*Id.* at ¶¶ 79-87.)

4

Subsequent to filing suit, MBSMS filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff Claude C. Lightfoot, Jr. ("Plaintiff"), the trustee of the Unsecured Creditors' Trust established by MBSMS's bankruptcy plan, was substituted into this litigation for MBSMS as Plaintiff. (*See Ex Parte* Consent Mot. to Substitute Party Pl.)  Wright & Percy now moves for summary judgment on several of Plaintiff's claims.  Specifically, Wright & Percy seeks dismissal of the claims for failure to procure adequate insurance, failure to prosecute and process MBSMS's insurance claims, unauthorized retirement of MBSMS's insurance claims, and collusion. (Def.'s First Mem. Supp. Mot. Summ. J. 2.)

## II.  **STANDARD OF REVIEW**

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

5

**III. DISCUSSION**

Wright & Percy moves for summary judgment on four claims asserted by Plaintiff: (1) that Wright & Percy failed to procure adequate insurance for MBSMS; (2) that Wright & Percy failed to prosecute and process MBSMS's insurance claims; (3) that Wright & Percy retired MBSMS's insurance claims without authority; and (4) that Wright & Percy colluded with the other defendant insurers to suppress MBSMS's insurance claims.

**A. Failure to Procure**

Wright & Percy seeks summary judgment on the claim for failure to procure adequate insurance. Before assessing whether Wright & Percy is entitled to summary judgment on the failure to procure adequate insurance claim, it must be determined what coverage was procured for MBSMS. Plaintiff alleges that all MBS entities are insured and that MBSMS secured blanket business interruption coverage up to $500 million. (Pl.'s Mem. Opp'n to Def.'s Mem. Supp. Mot. Summ. J. 11.) For the reasons previously given in the Court's Order and Reasons on October 13, 2010 (Rec. Doc. 313), MBSMS is the only MBS entity that is insured under the Hartford, Homeland, and RSUI policies.[2] Regarding whether MBSMS has secured business interruption coverage up to $500 million currently remains an issue of fact for trial. (*See* Order and Reasons, Rec. Doc. 308.)

Because the Court determined that not all MBS entities are insured, Plaintiff seeks recovery

---

[2] Furthermore, the insurance contracts cannot be reformed on account of any mutual mistake allegedly made by Wright & Percy because Wright & Percy is not an insurance agent for Hartford, Homeland, or RSUI, but is an independent insurance broker hired by MBSMS. *See Sam Broussard Trucking Co., Inc. v. Am. Southwest Underwriters Corp.*, 544 So.2d 1276, 1281 (La. App. 4th Cir. 1989) (finding that the role of an independent insurance broker is not comparable to that of an individual agent employed by an insurance company). Therefore, Plaintiff's only course of relief against Wright & Percy with respect to the lack of coverage for all MBS entities is a claim for failure to obtain adequate insurance coverage. *See id.*


against Wright & Percy for its alleged failure to procure adequate insurance.  Thus, the Court turns to Wright & Percy's request for summary judgment on the claim for failure to procure adequate insurance.[3]  Wright & Percy asserts that summary judgment is appropriate because the claim has been perempted under section 9:5606 of the Louisiana Revised Statutes.

Before addressing the peremption defense, the Court notes that the peremption defense was not timely raised by Wright & Percy in accordance with Rule 8(c) of the Federal Rules of Civil Procedure.  Rule 8(c) requires parties to plead all affirmative defenses.  Fed. R. Civ. P. 8(c).  Although the plea of peremption is specific to Louisiana law, federal courts have treated peremption and prescription as affirmative defenses under Rule 8(c).  *See e.g.*, *Exxon Mobil Corp. v. Turner Industries Group LLC*, 339 Fed. Appx. 441, 444 n.3 (5th Cir. 2009); *Computer Assoc. Int'l Inc. v. Alton Oschner Med. Found.*, 00-177, 2000 WL 687751, at *1 (E.D. La. May 26, 2000).  Failure to comply with Rule 8(c) "generally results in a waiver" of the defense.  *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983) (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1278).  "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal."  *Jones v. Miles,* 656 F.2d 103, 107 n.7 (5th Cir. 1981).  Even though the peremption defense was not pled, the Court finds that Plaintiff is not prejudiced by the defense at this juncture given that the defense was raised in a motion for summary judgment before trial, Plaintiff has

---

[3] The Court will not address the motion for summary judgment on Plaintiff's claim for failure to procure adequate insurance in the amount of $500 million because an issue of fact still remains as to whether Plaintiff has coverage for $500 million.  (*See* Order and Reasons, Rec. Doc. 308.)  Thus, Wright & Percy's motion for summary judgment is denied to the extent that it seeks summary judgment on the failure to procure adequate insurance in the amount of $500 million.

responded to the motion, and Plaintiff has not objected to the timeliness of the notice of the defense. Wright & Percy, however, shall amend its answer pursuant to Rule 15 of the Federal Rules of Civil Procedure to assert the defense of peremption, or it shall be deemed to be waived.

    Now turning to section 9:5606, section 9:5606 provides that:

    A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

    B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

    C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

    D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

La. Rev. Stat. § 9:5606. The statute provides two limitations periods. The first period bars an action against an insurance agent if the action is not brought within one year of the date that the plaintiff had actual or constructive knowledge of the alleged act, omission, or neglect that led to the cause of action. La. Rev. Stat. § 9:5606; *see also Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 670 (5th Cir. 2007). The second period bars an action against an insurance agent if the action is not brought within three years from the date of the alleged act, omission, or neglect regardless of when the plaintiff discovered the alleged act. *Id.* These peremptive periods may not be renounced, interrupted, or suspended. La. Rev. Stat. § 9:5606. The parties do not contest that the action was brought within the three year peremptive period given that Wright & Percy issued the policy in

December of 2004 and suit was filed in August of 2007. Rather, the parties disagree as to whether Plaintiff timely filed suit within the one year peremption period.

Primarily, the parties disagree over when MBSMS discovered or should have discovered its cause of action against Wright & Percy. Wright & Percy argues that MBSMS had constructive knowledge of its lack of coverage when it received the policies in December of 2004. Because MBSMS failed to file suit within one year from December 2004, Wright & Percy contends that the claim has been perempted under section 9:5606. Plaintiff argues that the claim is not perempted because the instant suit was filed within one year from discovery of Wright & Percy's negligence. Plaintiff alleges that MBSMS did not discover Wright & Percy's "alleged act, omission, or neglect" to procure adequate insurance until after the instant suit was filed in August of 2007 or at the earliest in March of 2007 when the claim was re-opened by the insurance companies.

In accord with *Campbell*, MBSMS's discovery of its cause of action against Wright & Percy turns on MBSMS's actual or constructive knowledge of Wright & Percy's alleged failure to procure adequate insurance. Under Louisiana law, constructive knowledge is "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Camp v. Correa*, 2001-2707, p. 11-12 (La. 6/21/02); 828 So.2d 502, 510-11. In *Campbell v. Stone Insurance, Inc.*, the Fifth Circuit found that the plaintiffs had constructive knowledge of the contents of their insurance policy when they received the insurance policy and an accompanying letter from their insurance company. *Campbell*, 509 F.3d at 671-72 (noting that Louisiana law imposes a duty on the insured to read his insurance policy). Similarly, in *Ruiz v. Allstate Insurance Co.*, the Fifth Circuit held that the plaintiff had constructive notice of inadequate insurance when the plaintiff received a copy of his homeowner's insurance policy before Hurricane Katrina. *Ruiz v. Allstate Insurance Co.*, 295 Fed.

9

Appx. 668, 672 (5th Cir. 2008).  The court reasoned that the plaintiff was charged with knowing the provisions of his homeowner's insurance policy because Louisiana law requires an insured to read his insurance policy.  *Id.*  Likewise, in *Jambon v. State Farm Fire & Cas. Co.*, the Fifth Circuit determined that the plaintiffs acquired constructive notice of their lack of coverage when they received and paid the renewal on their flood insurance policy.  *Jambon v. State Farm Fire & Cas. Co.*, 982 So.2d 131, 133 (5th Cir. 2008).

In the instant case, Mr. McLaughlin of Wright & Percy delivered the Hartford, Homeland, and RSUI policies to MBSMS in December of 2004 (Def.'s Second Mem. Supp. Mot. Summ. J. 3), and Mr. Couture kept a copy of the policies in his office (Couture Dep. 82:3-7).  Thus, in accord with *Campbell*, *Ruiz*, and *Jambon*, MBSMS had constructive notice of Wright & Percy's alleged failure to procure adequate insurance when MBSMS received the insurance policies in December of 2004.  Under Louisiana law, MBSMS was required to read and examine the contents of its insurance policies.  MBSMS had constructive notice of the extent of its coverage.  Had MBSMS read its insurance policies, it would have realized that MBSRI was not listed as a named insured on any policy.[4]  Thus, Plaintiff's claim against MBSMS for failure to procure adequate insurance for all MBS entities has been perempted.  As a result, the Court will not address the merits of Plaintiff's claim for failure to procure adequate insurance for all MBS entities.

### B. Failure to Prosecute & Process

Wright & Percy also moves for summary judgment on Plaintiff's claim for failure to

---

[4] As for the email correspondence between Mr. McLaughlin and Ms. Goldman regarding the named insureds, Ms. Goldman explained that MBSMS's coverage only extended to additional insureds if a certificate was issued, none of which was issued for MBSRI.  (*See* Goldman Dep. 151:21-152:21, Ex.26.)

prosecute and collect MBSMS's business interruption, extra expense, and other insurance claims. Under Louisiana law, an insurance broker does not have an independent duty to adjust an insured's claim or assist in the claims filing or adjustment process. *Kurz, D.C. v. Scottsdale Ins. Co.*, No. 06-7431, 2006 WL 3240787, at *4 (E.D. La. Nov. 7, 2006). An insurance broker, however, may assume a duty "if he holds himself out as being responsible for a client's claims adjustment." *Tippen v. Republic Fire & Cas. Ins. Co.*, No. 06-7701, 2006 WL 4219352, at *6 (E.D. La. Nov. 28, 2007). In *Labella Catering Inc. v. St. Paul Fire & Marine Ins. Co.*, the court declined to dismiss the plaintiff's claim against its insurance broker because the plaintiff presented sufficient evidence that the insurance broker assumed a duty to the plaintiff in adjusting its claim when the broker hired a CPA to help settle the claim. *Labella Catering Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 06-4164, 2006 WL 3254488, at *2 (E.D. La. Nov. 6, 2006). Even if an insurance broker assumes a duty to the insured, there is no actionable claim unless the insurance broker's failure to assist is a cause in fact of the harm for which recovery is sought. *Kurz, D.C.*, 2006 WL 3240787, at *4.

Plaintiff argues that there is a triable issue of fact as to whether Wright & Percy took an active role in processing MBSMS's claim, and thereby undertook a duty to assist MBSMS in pursuing the claim. Specifically, Plaintiff directs the Court to a business proposal submitted by Wright & Percy to MBSMS, which indicates that Wright & Percy would provide MBSMS with claims handling assistance. The proposal reads in part: "Loss control and claim professionals are available to all our clients . . . . Contact person for claims reporting/involved in initial submission of claims/follow-up with insurance claims personnel." Additionally, Plaintiff asserts that Mr. McLaughlin of Wright & Percy failed to complete a business interruption worksheet in determining Plaintiff's loss. Conversely, Wright & Percy argues that it was not obligated to assist MBSMS in

adjusting its claim and that Plaintiff has failed to show that Wright & Percy's lack of involvement caused any damage. Unlike in *Labella*, Plaintiff has not adduced sufficient evidence to demonstrate that Wright & Percy assumed an active duty in processing MBSMS's claim. The representations in Wright & Percy's business proposal do not assume a duty to assist MBSMS in handling its insurance claims, but merely make MBSMS aware that claims professionals are available for assistance as well as provide a list of claim representatives to contact at Wright & Percy. Although the business proposal states that claims professionals are available, the business proposal does not state that the claims professionals will handle or process claims for the insured nor does it describe the tasks for which the claims professionals are available. Aside from the two references in the business proposal, Plaintiff has not identified any other representations made by Wright & Percy indicating an intent to handle MBSMS's claims. Moreover, the business proposal contains no other representations by Wright & Percy suggesting that it would handle claims for MBSMS. Even if Wright & Percy assumed a duty to assist MBSMS in processing its claim, Plaintiff has not demonstrated that Wright & Percy's lack of assistance caused the insurers to withhold payment. *See Kurz, D.C.*, 2006 WL 3240787, at *4. Thus, Wright & Percy is entitled to summary judgment on Plaintiff's claim for failure to prosecute and process MBSMS's insurance claim.

### C. Unauthorized Retirement of MBSMS's Insurance Claim

In addition, Wright & Percy moves for summary judgment on Plaintiff's claim for unauthorized retirement of MBSMS's insurance claims. Plaintiff asserts that Wright & Percy misrepresented to MBSMS that its covered losses did not exceed the deductible on its insurance policy. There is no evidence that Wright & Percy made any representations to MBSMS regarding the value of its insurance claims. Further, Mr. Couture testified that he had authorized Wright &

Percy to close MBSMS's insurance claim and notified Mr. Smuck of the claim being closed. In addition, Wright & Percy, as an insurance broker, had no affirmative duty to assist MBSMS in processing its claim and in determining the deductible. *See Kurz, D.C.*, 2006 WL 3240787, at *4. Plaintiff therefore has no colorable claim against Wright & Percy for allegedly misrepresenting the amount of covered losses MBSMS incurred as a result of Hurricane Katrina, and no colorable claim that Wright & Percy retired MBSMS's insurance claim without proper authorization.

### D. Collusion

Finally, Wright & Percy seeks summary judgment on Plaintiff's collusion claim. In Plaintiff's Opposition, Plaintiff agreed to drop the collusion claim, stating that "[T]he circumstances of this case have prevented plaintiff from developing its case that Wright & Percy colluded with the insurers to minimize MBS' claim to collect a contingency fee. Therefore, MBS does not oppose dismissal of this aspect of its claim." Because Plaintiff has withdrawn the collusion claim, Wright & Percy is entitled to summary judgment on the collusion claim.

### IV. Conclusion

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 172)** and the **Motion for Summary Judgment (Rec. Doc. 193)** filed by Defendant Wright & Percy Insurance Agency are **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiff Claude C. Lightfoot, Jr.'s claims for failure to procure adequate insurance for all MBS entities, failure to process and prosecute MBSMS's insurance claims, unauthorized retirement of MBSMS's insurance claims, and collusion are

**DISMISSED WITH PREJUDICE.**

Defendant Wright & Percy's motion for summary judgment on Plaintiff's claim for failure to procure adequate business interruption coverage in the amount of $500 million is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Wright & Percy amend its Answer within fifteen days as per the reasons previously stated.

This 18th day of October, 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE