UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLAUDE C. LIGHTFOOT, JR.,                                  CIVIL ACTION
substituted as Trustee of the Unsecured
Creditors' Trust formed in connection
with the bankruptcy of MBS

VERSUS                                                     NO: 07-4833

HARTFORD FIRE INSURANCE                                    SECTION: "A" (3)
COMPANY, ET AL.

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 194)** filed by Defendant Hartford Fire Insurance Company ("Hartford"), a **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 196)** filed by Defendant Homeland Insurance Company ("Homeland"), and a **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 200)** filed by Defendant RSUI Indemnity Company, Inc. ("RSUI"). Plaintiff, Claude C. Lightfoot, Jr. ("Plaintiff"), opposes the Motions. The Motions, set for hearing on September 29, 2010, are before the Court on the briefs without oral argument. For the reasons that follow, the Motions are **GRANTED**.

## I. BACKGROUND

This matter arises out of an insurance dispute concerning coverage under several different insurance policies for losses incurred as a result of Hurricane Katrina. MBS Management Services, Inc. ("MBSMS") was a real estate company whose principal place of business was located in Metairie, Louisiana. (Compl. ¶¶ 1, 9.) MBSMS dealt mainly with multi-family residential apartment complexes. (*Id.* at ¶ 4.) MBSMS was part of a conglomerate of different MBS entities.

1

(Gonzales Aff. Ex. A at 3.) All accounts for the MBS entities were processed in the Metairie office, and "all operations regarding the buying and selling of properties were conducted" out of the Metairie office. (*Id.* at 4.) The MBS entities primarily generated income by purchasing properties, managing them for a period of time, and then selling them for a profit. (*Id.* at 2-3.) In August of 2005, the real estate portfolio for the MBS entities consisted of seventy properties located mostly in Texas and, to a lesser extent in Florida. (*Id.* at 3.) With the exception of MBSMS, the entities comprising MBS only existed on paper. (*Id.*) MBS Realty Investors, Ltd. ("MBSRI"), an entity of MBS, earned income through the buying and selling of properties. (Pl.'s Mem. Opp'n to Defs.' Mot. Summ. J. 4-5.) All income generated by MBSRI ultimately flowed to MBSMS, and MBSRI paid many expenses for MBSMS. (*Id.* at 4.)

Prior to Hurricane Katrina, MBSMS contacted a retail broker, Wright & Percy Insurance, a division of Bancorp South Insurance Services, Inc. ("Wright & Percy"), to procure insurance on its behalf. (Compl. at ¶ 15.) Wright & Percy placed the insurance through another insurance broker, American E & S Insurance Brokers California, Inc. ("American E & S"), who secured insurance from Defendants. (*Id.* at ¶¶ 16-17.) Defendants provided three layers of insurance to MBSMS - a primary layer of $10,000,000 from Hartford Fire Insurance Company ("Hartford"), a secondary layer of $10,000,000 from Homeland Insurance Company ("Homeland"), and a tertiary layer of $480,000,000 from RSUI Indemnity Company, Inc. ("RSUI"). (*Id.* at ¶¶ 11-13.) Defendants' insurance policies provided coverage for business interruption losses sustained by MBSMS. (Pl.'s Mem. Opp'n to Defs.' Mot. Summ. J. 2-3.)

In late August of 2005, Hurricane Katrina struck and caused significant damage to MBSMS's Metairie office, resulting in considerable business interruption losses. (Compl. at ¶¶ 19-

22.) MBSMS notified Wright & Percy of its losses. (*Id.* at ¶ 22.) Brent Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, however, authorized Wright & Percy to tell Hartford "that the claim was being withdrawn" after determining that the covered losses would not exceed the deductible on MBSMS's primary layer of insurance with Hartford. (Couture Dep. 90:5 - 91:12.) On March 7, 2007, Wright & Percy contacted Hartford to re-open MBSMS's claim for business loss interruption. (Homeland's Mem. Supp. Mot. Summ. J. 3.) Homeland asserts that it was not advised of the claim until July 9, 2007. (*Id.* at 4.) On August 15, 2007, MBSMS presented its first set of partial documentation to support the business interruption claim to Hartford, which consisted of schedules totaling $5.6 million without any alleged supporting documentation. (*Id.* at 5.) MBSMS then filed suit on August 28, 2007 against Wright & Percy, American E & S, and Defendants. (*See* Compl.) The Complaint levels several charges against Defendants. It alleges that Defendants wrongfully failed to pay MBSMS's claims for business income losses and extra expenses. (*Id.* at ¶¶ 36-40.) It also alleges that Defendants breached the implied covenant of good faith and fair dealing and asserts bad faith claims pursuant to section 22:1892 (formerly section 22:658) and section 22:1973 (formerly section 22:1220) of the Louisiana Revised Statutes. (*Id.* at ¶¶ 45-52.)

Subsequent to filing suit, MBSMS also filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff Claude C. Lightfoot, Jr., the trustee of the Unsecured Creditors' Trust established by MBSMS's bankruptcy plan, was substituted into this litigation for MBSMS as Plaintiff. (*See Ex Parte* Consent Mot. to Substitute Party Pl.) At a mediation held on September 23, 2010, Plaintiff reached a settlement with Defendant Hartford. (Pl.'s Mem. Opp'n to Defs.' Mot. Summ. J. 3.)

The remaining Defendants now move for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and on Plaintiff's bad faith claims pursuant to section 22:1892 and section 22:1973. (Homeland's Mem. Supp. Mot. Summ. J. 1, 20-21; RSUI Mem. Supp. Mot. Summ. J. 1.) Defendant Homeland argues that it did not receive MBSMS's claim until October 12, 2007 after suit was filed. (Homeland's Mem. Supp. Mot. Summ. J. 5.) After reviewing the documentation submitted by MBSMS, Defendants determined that there was no coverage for MBSMS, or alternatively, that there was a reasonable good faith dispute as to coverage. (*Id.* at 6.) Defendants contend there is no coverage for MBSMS because MBSMS's claim included damages incurred by MBSRI, an entity not insured under the policies, and because there is a good faith dispute over whether the failure to acquire properties was caused by Hurricane Katrina. (*Id.* at 6-7.) Additionally, Defendants assert there is a good faith dispute over coverage because the primary layer of insurance with Hartford has not been exhausted. (*Id.* at 21-24; RSUI's Mem. Supp. Mot. Summ. J. 4.) Finally, Defendants argue that Plaintiff may not assert a claim for breach of the implied covenant of good faith and fair dealing because Louisiana courts have not recognized this cause of action for breach of an insurance contract. (Homeland's Mem. Supp. Mot. Summ. J. 21-22.)

Plaintiff opposes the motions, arguing that MBSMS provided Defendants with supporting documentation for the business interruption claim and that Defendants have failed to pay any money owed on the claim. (Pl.'s Mem. Opp'n to Defs.' Mot. Summ. J. 3-4.) Plaintiff asserts that the lost acquisitions and dispositions were caused by Hurricane Katrina and that the business interruption claim totals $27 million. (*Id.* at 6, 8-9.) Furthermore, Plaintiff argues that MBSMS may recover for losses incurred by MBSRI because all the money from MBSRI flowed through to MBSMS. (*Id.*

4

at 4.)

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

## III. DISCUSSION

### A. Bad Faith Claims

Defendants move for summary judgment on Plaintiff's bad faith claims pursuant to sections 22:1892 and 22:1973. Under Louisiana law, an insurance company is liable for statutory penalties pursuant to section 22:1892 (formerly section 22:658) and section 22:1973 (formerly section 22:1220) for failure to pay insurance claims in good faith. La. Rev. Stat. § 22:1892; La. Rev. Stat. § 22:1973. Section 22:1892 provides that insurers are liable for penalties and attorneys' fees for

5

failure to pay an insured's claim within thirty days after receipt of a satisfactory proof of loss when that failure is arbitrary, capricious, or without probable cause. La. Rev. Stat. § 22:1892. Likewise section 22:1973 provides that insurers are liable for penalties for failure to pay an insured's claim within sixty days after receipt of a satisfactory proof of loss when that failure is arbitrary, capricious, or without probable cause. La. Rev. Stat. § 22:1973. Both statutes are penal in nature, and thus, are construed strictly. *Reed v. State Farm Mut. Ins. Co.*, 2003-107, p. 12-13 (La. 10/21/03); 857 So.2d 1012, 1020. Additionally, the duty to pay under both statutes is virtually identical.[1] *Id.* Therefore, the party seeking relief under either statute has the burden of establishing three things: (1) the insurer received a satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period (thirty or sixty days); and (3) the insurer's failure to pay the claim was arbitrary and capricious. *Talbert v. State Farm Fire & Cas. Ins. Co.*, 07-211, p. 8 (La. App. 4th Cir. 11/14/07); 971 So.2d 1206, 1212. An insurer is charged with receiving a satisfactory proof of loss when the insurer has adequate knowledge of the loss. *Cotton Bros. Banking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 386 (5th Cir. 1991).

"Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Reed*, 857 So.2d at 1021. An insurer acts arbitrarily, capriciously, or without probable cause when the "insurer knowingly commit[s] actions which [are] completely unjustified, without reasonable or probable cause or excuse." *Holt v. Aetna Cas. & Sur. Co.*, 28450-CA, p. 18 (La. App. 2d. Cir. 9/3/96); 680 So.2d 117, 130. Nevertheless,

---

[1] A plaintiff may be awarded penalties under only one of the two statutes, whichever is greater. *Perfect Co. v. Essex Ins. Co.*, No. 07-7642, 2010 WL 2835889, at *2 (E.D. La. July 15, 2010). Nonetheless, a plaintiff may recover attorneys' fees under section 22:1892 while seeking damages and penalties under section 22:1973. *Id.*

"[t]he statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on the defense."  *Reed*, 857 So.2d at 1021; *see also Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. App'x. 671, 679 (5th Cir. 2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of loss.").

In several cases, courts have found that defendant insurers did not act in bad faith pursuant to sections 22:1892 and 22:1973.  In *Kodrin v. State Farm Fire & Cas. Co.*, the Fifth Circuit vacated the district court's award of penalties, damages, and attorneys' fees under the bad faith statutes because the plaintiff failed to show that the defendant insurer acted in bad faith in failing to pay the plaintiff's claim.  *Kodrin*, 314 Fed. App'x. at 680.  The Fifth Circuit held that as a matter of law the defendant insurer had a reasonable basis to deny the plaintiff's wind claim because sufficient evidence existed to suggest that the plaintiff's home was damaged due to flooding, which was excluded under the defendant's policy.  *Id.* at 679-80.  Similarly, in *Dominio v. Allstate Insurance Co.*, Judge Fallon of the Eastern District of Louisiana determined that the defendant homeowner insurer did not act arbitrarily, capriciously, or without probable cause under sections 22:1892 and 22:1973 in denying the plaintiff's personal property claim because there was a good faith dispute about coverage and the applicability of the Concealment or Fraud clause listed in the policy.  *Dominio v. Allstate Insurance Co.*, No. 09-7348, 2010 WL 4066647, at *5 (E.D. La. Oct. 15, 2010).  The court reasoned that the defendant was justified in denying the claim because there were genuine issues of material fact regarding whether the plaintiff had the fraudulent intent to deceive the defendant as to the cause of the fire.  *Id.*  Additionally, in *Defrancesch v. Employers Mut. Cas. Co.*, Judge Engelhardt of the Eastern District of Louisiana concluded that a reasonable and legitimate

7

dispute existed as to the actual extent and cause of the plaintiff's claimed damages, thus precluding plaintiff's bad faith claims against the defendant. *Defrancesch v. Emp'rs Mut. Cas. Co.*, 2008 WL 1930450, at *4 (E.D. La. 2008). The court found that the plaintiff's failure to provide supporting documentation for the claimed repairs, the plaintiff's failure to parse out categories of damages, and the fact that certain damages may have pre-existed the storm foreclosed a finding of bad faith on the part of the defendant. *Id.*

Other courts have also declined to find bad faith when doubt existed as to whether the plaintiff was covered under the defendant's insurance policy. In *Howell v. American Cas. Co.*, the court found that the defendant excess insurer did not act arbitrary and capricious in declining to defend a corporation because the defendant reasonably believed that the primary layer of insurance had not been exhausted. *Howell v. American Cas. Co.*, 96-694, p. 19 (La. App. 4th Cir. 3/19/97); 691 So.2d 715, 727-28. Even though it was determined on appeal that the primary layer of insurance had been exhausted, the court concluded that the defendant did not act in bad faith in refusing to defend the corporation because the trial court was uncertain as to whether the primary layer of insurance had been exhausted. *Id.* Likewise, in *McGrew v. State Farm Mut. Auto. Ins. Co.*, the court held that the defendant excess insurer did not act arbitrary and capricious in denying the plaintiff's claim given that there was a serious dispute as to the amount of the claim and the extent of coverage provided by the two primary insurers. *McGrew v. State Farm Mut. Auto. Ins. Co.*, 385 So.2d 1276, 1284 (La. App. 1980). Similarly in *Foreman v. Grammar*, the court denied the third party plaintiff's motion to award penalties and attorneys' fees after finding that genuine issues of material fact existed as to whether the third party plaintiff was even an insured party under the third party defendant's insurance policy. *Foreman v. Grammar*, No. 6:04-820, 2005 WL 1657132, at *5,

8 (W.D. La. July 13, 2005). In *Nelson v. Allstate Insurance Co.*, the defendant excess insurer also refused to pay the plaintiff's claim because the primary insurer had not paid up to its policy limits. *Nelson v. Allstate Ins. Co.*, 464 So.2d 1015, 1019 (La. App. 1st Cir. 1985). In contrast, the court found that the defendant was subject to the statutory penalties because the defendant knew that the plaintiff's damages exceeded the primary layer of insurance and that the primary insurer already had paid the policy limit. *Id.* at 1019-1020. The court observed that had the defendant deposited its policy limits within sixty days after the primary insurer had paid its claim, there would have been a valid reason for finding that the defendant did not act in bad faith. *Id.* at 1020.

In the instant case, it must be determined whether Defendants complied with the statutory requirements under Revised Statutes 22:1892 and 22:1973. Under *Talbert*, Plaintiff has the burden of establishing that Defendants acted in bad faith. Regarding the satisfactory proof of loss prerequisite, Plaintiff has presented sufficient facts to allow a reasonable jury to find that Plaintiff provided Defendants with a satisfactory proof of loss. Plaintiff asserts that "[e]very single document in all locations belonging to the MBS companies has been produced" to Defendants and that over twenty-four depositions have been conducted in this case. (Pl.'s Mem. Opp'n to Defs.' Mot. Summ. J. 4.) Additionally, Defendant Homeland has acknowledged receiving Plaintiff's claim on October 12, 2007. (Homeland's Mem. Supp. Mot. Summ. J. 5.) Thus, under *Cotton Brothers Banking Co.*, a reasonable jury could conclude that Defendants possess adequate knowledge of Plaintiff's loss. A reasonable jury also could find that Defendants failed to pay Plaintiff's claim within the applicable statutory periods. Based on the facts, Defendants had adequate knowledge of Plaintiff's loss on October 12, 2007. Given that it has been three years since that date, Defendants have failed to pay Plaintiff's claim within the requisite thirty day and sixty day statutory periods.

Finally, it must be ascertained whether Defendants failure to pay Plaintiff's claim was arbitrary or capricious. Here, the facts indicate that Defendants had a reasonable basis to defend against Plaintiff's claim. In accord with *Kodrin*, *Dominio*, and *Defrancesch*, Defendants have demonstrated a good faith dispute about coverage. Initially, there was a genuine dispute as to whether MBSRI was covered under Defendants' insurance policies. The Court, having resolved this dispute in its Order and Reasons on October 13, 2010 (Rec. Doc. 313), determined that MBSMS is the only MBS entity insured under Defendants' policies. Having reached this conclusion, genuine issues of fact exist as to the amount of damages sustained solely by MBSMS. As in *Defrancesch*, Plaintiff has also failed to provide sufficient supporting documentation for the damages incurred by MBSMS and has failed to parse out MBSMS's losses from the total damages sustained by the MBS entities. Like in *Foreman*, the dispute over the named insureds listed in Defendants' insurance policies precludes the Court from finding that Defendants acted in bad faith. Additionally, like in *Howell* and *McGrew*, a good faith dispute exists as to whether Plaintiff has exhausted its primary layer of insurance. Having determined that MBSMS is the only MBS entity insured under Defendants' policies, a genuine dispute exists as to whether MBSMS's damages exceed the primary layer of insurance provided by Hartford, especially when Plaintiff's total damages include losses incurred by other uninsured MBS entities. Unlike in *Nelson*, Defendants are not aware of whether Plaintiff's damages exceed the primary layer of insurance given that MBSMS's individual damages are unknown. Thus, Defendants have demonstrated a genuine, good-faith dispute about coverage, including whether MBSMS's losses exceed the primary layer of insurance.

### B. Breach of the Implied Duty of Good Faith and Fair Dealing Claim

Defendants also move for summary judgment on Plaintiff's claim for breach of the implied duty of good faith and fair dealing because Louisiana courts do not recognize an independent tort claim against insurers. Rather, Defendants assert that the bad faith statutes encompass the duty of good faith and fair dealing. Plaintiff's Opposition does not address this claim. In *Robin v. Allstate Insurance Co.*, the court held that the plaintiff failed to state a cause of action against the defendant insurer for breach of the duty of good faith and fair dealing because Louisiana law did not recognize an independent cause of action against insurers other than the statutory causes of action for bad faith. *Robin v. Allstate Ins. Co.*, 03-1009, 02-926, p. 6-7 (La. App. 3d. Cir. 3/24/04); 870 So.2d 402, 408. Having found that Defendants' argument has merit and that Plaintiff has not objected, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing given that Louisiana law does not provide an independent cause of action for such claims against insurers.

### IV. Conclusion

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 194)** filed by Defendant Hartford Fire Insurance Company ("Hartford"), the **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 196)** filed by Defendant

Homeland Insurance Company ("Homeland"), and the **Motion for Summary Judgment on Bad Faith Claims (Rec. Doc. 200)** filed by Defendant RSUI Indemnity Company, Inc. ("RSUI") are **GRANTED**.

This 23rd day of November, 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE