UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDE C. LIGHTFOOT, JR., substituted as Trustee of the Unsecured Creditors' Trust formed in connection with the bankruptcy of MBS | CIVIL ACTION |
| VERSUS | NO: 07-4833 |
| HARTFORD FIRE INSURANCE COMPANY, ET AL. | SECTION: "A" (3) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment on the "Failed Acquisition" Claim of MBS Management Services, Inc. (Rec. Doc. 191)** filed by Defendant RSUI Indemnity Company, Inc. ("RSUI"). Plaintiff, Claude C. Lightfoot, Jr. ("Plaintiff"), opposes the Motion. The Motion, set for hearing on September 29, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is **GRANTED**.

## I. BACKGROUND

This matter arises out of an insurance dispute concerning coverage under several different insurance policies for losses incurred as a result of Hurricane Katrina. MBS Management Services, Inc. ("MBSMS") was a real estate company whose principal place of business was located in Metairie, Louisiana. (Compl. ¶¶ 1, 9.) MBSMS dealt mainly with multi-family residential apartment complexes. (*Id.* at ¶ 4.) MBSMS was part of a conglomerate of different MBS entities. (O'Rear Expert Report 4.) The MBS business entities conducted nearly all business operations from the Metairie office. (*Id.* at 3.) The MBS entities primarily generated income by purchasing properties, managing them for a period of time, and then selling them for a profit. (*Id.* at 3-4.)

1

Prior to Hurricane Katrina, MBSMS contacted a retail broker, Wright & Percy Insurance, a division of Bancorp South Insurance Services, Inc. ("Wright & Percy"), to procure insurance on its behalf. (Compl. at ¶ 15.) Wright & Percy placed the insurance through another insurance broker, American E & S Insurance Brokers California, Inc. ("American E & S"), who secured insurance from several insurers. (*Id.* at ¶¶ 16-17.) The insurers provided three layers of insurance to MBSMS - a primary layer of $10,000,000 from Hartford Fire Insurance Company ("Hartford"), a secondary layer of $10,000,000 from Homeland Insurance Company ("Homeland"), and a tertiary layer of $480,000,000 from RSUI. (*Id.* at ¶¶ 11-13.) Like the other insurers, RSUI's insurance policy provided coverage for MBSMS's business interruption losses. (Def.'s Statement of Undisputed Facts ¶ 14.) Specifically, the RSUI policy follows the form of the underlying Hartford Policy, which provides in pertinent part:

> Business Interruption Coverage for Non-Manufacturers
>
> We will pay for the Actual Loss Sustained due to the necessary interruption of business operations caused by direct physical loss of or damage to property at premises (including business personal property within 1000' of the premises) for which applicable Business Interruption Limit of Insurance are stated in the Declarations, but not exceeding the reduction in Gross Earnings less charges and expenses which do no necessarily continue during the Period of Restoration. The loss or damage must be caused by or result from a Coverage Cause of Loss.
>
> "Period of Restoration" is defined as the period of time that:
>
> > a. Begins at the time the Covered Cause of Loss event occurs; and
> >
> > b. Ends on the earlier of:
> >
> > (1) The date when the property would be repaired, rebuilt or replaced with due diligence and dispatch and with similar quality; or
> >
> > (2) The date when business is resumed at a new permanent location.

(*Id.* at ¶ 14.)

In late August of 2005, Hurricane Katrina struck and caused significant damage to MBSMS's Metairie office, resulting in considerable business interruption losses. (Compl. at ¶¶ 19-22.) MBSMS opened a temporary office in Houston following the hurricane. (Def.'s Statement of Undisputed Facts ¶ 3.) Due to the hurricane, MBSMS lacked access to critical documents located in the Metairie office. (O'Rear Expert Report 4.) In September of 2005, MBSMS notified Wright & Percy of its losses. (Compl. at ¶ 22.) Brent Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, however, authorized Wright & Percy to tell Hartford "that the claim was being withdrawn" after determining that the covered losses would not exceed the deductible on its primary layer of insurance with Hartford. (Couture Dep. 90:5 - 91:12, Oct. 30, 2008.) MBSMS moved back to the Metairie office in late November of 2005. (Def.'s Statement of Undisputed Facts ¶ 3.) Full access for all employees was restored by December 15, 2005. (O'Rear Expert Report 4.)

On March 7, 2007, MBSMS notified Hartford of its intent to re-open the claim for business loss interruption. (Def.'s Statement of Undisputed Facts ¶ 5.) MBSMS hired expert, Mark O'Rear, to calculate its lost profits. (Def.'s Mem. Supp. Mot. Summ. J. 4.) O'Rear opined that the MBS entities sustained $27.2 million in lost profits as a result of Hurricane Katrina. (*Id.*) In particular, O'Rear identified six categories of damages. (*Id.*) The first category of alleged damages included $5.4 million for five failed identified property acquisitions that allegedly were in the process of being sold when Hurricane Katrina struck. (*Id.* at 5.) These damages were calculated by estimating the acquisition fee, acquisition and closing costs, brokerage fees, and consulting fees based on recent transactions with comparable prices. (*Id.*) The second category of damages totaled $5.1 million for seven unidentified acquisitions that the MBS entities should have acquired had the hurricane not

occurred. (*Id.*) This figure was computed over an eighteen month period after Hurricane Katrina based on the eighteen acquisitions that the MBS entities had acquired in the eighteen months prior to Hurricane Katrina excluding the six acquisitions acquired after Hurricane Katrina and the five failed identified acquisitions. (*Id.*) The third category of damages consisted of $14.1 million for the lost income that the MBS entities allegedly would have realized on the five failed identified acquisitions ($3.2 million) and the seven failed unidentified acquisitions ($4.4 million). (*Id.* at 5-6.) These damages also included $6.4 million for alleged property management fees. (*Id.* at 6.) The fourth category of damages consisted of $1 million for delays incurred in disposing three properties that allegedly were in the process of being sold when Hurricane Katrina struck. (*Id.*) The last two categories of damages not disputed in the motion included $0.2 million for expenses needed to continue operations after the hurricane and $1.4 million in incremental interest on a line of credit. (*Id.* at 4.)

RSUI asserts that it was not advised of the business interruption claim until August 13, 2007. (*Id.* at ¶ 7.) On August 15, 2007, MBSMS presented its first set of partial documentation to support the business interruption claim to Hartford, which consisted of schedules totaling $5.6 million. (*Id.* at ¶ 8.) In the next two weeks, MBSMS submitted additional documentation of claims totaling $27.2 million. (*Id.* at ¶ 9.) MBSMS then filed suit on August 28, 2007 against Wright & Percy, American E & S, Hartford, Homeland, and RSUI. (*See* Compl.) The Complaint alleges that RSUI wrongfully failed to pay MBSMS's claims for business income losses and extra expenses. (*Id.* at ¶¶ 36-40.)

Subsequent to filing suit, MBSMS also filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff, Claude C. Lightfoot, Jr., the trustee of the Unsecured Creditors' Trust established by MBSMS's bankruptcy plan, was substituted into this litigation for MBSMS as

Plaintiff.  (*See Ex Parte* Consent Mot. to Substitute Party Pl.)  At a mediation held on September 23, 2010, Plaintiff reached a settlement with Hartford.  RSUI now moves for summary judgment on Plaintiff's failed acquisition claims.  (Def.'s Mem. Supp. Mot. Summ. J. 1-2.)  RSUI argues that most of Plaintiff's business loss claims were generated by another MBS entity, MBSRI, not MBSMS.  (*Id.* at 4.)  Even if MBSMS incurred all business interruption losses, RSUI contends that those losses are not actual losses, but are speculative losses and include losses incurred outside the Period of Restoration designated in the insurance policy.  (*Id.*)  RSUI further alleges that MBSMS's financial difficulties were not caused by Hurricane Katrina, but were caused by gross mismanagement and fraud on the part of Michael Smuck, Sr., the President of MBSMS.  (*Id.* at 3.)  As a result, RSUI concludes that it is entitled to summary judgment as the secondary excess insurer because Plaintiff's damages do not exceed the underlying policy limit of $20 million.  (*Id.* at 5.)  Plaintiff opposes the motion, arguing that its damages were calculated using actual data and based on a projection of earnings using past performance and history.  (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 7.)

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence

to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

### III. <u>DISCUSSION</u>

RSUI moves for summary judgment on Plaintiff's failed acquisition claims. Before assessing whether Plaintiff has presented sufficient evidence on damages for failed acquisitions, it must be determined whether Plaintiff's failed acquisition claims are covered business interruption losses under RSUI's policy. Both parties agree that Louisiana law governs the interpretation of the insurance policies. The "[i]nterpretation of an insurance policy usually involves a legal question which can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, 08-2607, p. 4 (La. 5/22/09); 12 So.3d 945, 949 (citing *Bonin v. Westport Ins. Corp.*, 05-886, p. 4 (La. 5/17/06); 930 So.2d 906, 910). An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts under Louisiana law, "which requires judicial determination of the common intent of the parties to the contract." *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94); 630 So.2d 759, 763; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So.2d 577, 580). "The parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the

words have a technical meaning." *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 763. An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (quoting La. Rev. Stat. § 22:654 (2004)). An insurance contract should not be interpreted "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion." *Id. (*quoting *Cadwallader*, 848 So. 2d at 580). "If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written." *Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, 10-142, p. 5 (La. App. 3 Cir. 6/9/10); 41 So.3d 1229, 1232 (citing La. Civ. Code. Art. 2046). Nevertheless, "[i]f an ambiguity remains after applying the general rules of contract interpretation, the ambiguous insurance policy provision is construed against the insurer." *Berry v. Paul Revere Life Ins. Co.*, 08-945, p.8-9 (La. 1 Cir. 7/9/09); 21 So.3d 385, 390; *Westerfield v. LaFleur*, 493 So.2d 600, 605 (La. 1986).

The Court first notes that Plaintiff only may recover for losses incurred by MBSMS under RSUI's insurance policy. For the reasons previously given in the Court's Order and Reasons on October 13, 2010 (Rec. Doc. 313), MBSMS is the only MBS entity that is insured under RSUI's policies. For the purposes of this motion, the Court will assume without deciding that the failed acquisitions were sustained by MBSMS. The parties do not dispute that the RSUI policy follows the form of the Hartford policy and provides coverage for business interruption losses. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 9 RSG 91002 0304.) The parties, however, dispute whether RSUI's business interruption coverage extends to the failed acquisitions incurred by MBSMS. Based on the

7

unambiguous wording of the RSUI policy, the RSUI policy does not provide coverage for a majority of MBSMS's failed acquisitions because those failed acquisitions were incurred beyond the Period of Restoration set forth in the Hartford policy.

Specifically, the Period of Restoration extends from "the time the Covered Cause of Loss event occurs" and "ends at the earlier of (1) the date when the property would be repaired, rebuilt or replaced with due diligence and dispatch and with similar quality or (2) the date when business is resumed at a new permanent location." (Def.'s Statement of Undisputed Facts ¶ 14.) In the instant case, the parties do not dispute that Hurricane Katrina qualifies as a Covered Cause of Loss event. Thus, the Period of Restoration started to run in late August of 2005 when Hurricane Katrina struck. The Period of Restoration ended at the latest on December 15, 2005. (*See* O'Rear Expert Report 4.) By December 15, 2005, full access for all employees was restored at the Metairie office. (*See* O'Rear Expert Report 4.) Furthermore, Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, testified that the Metairie office reopened after Thanksgiving and that all operations at the temporary office in Houston had been shut down by that time. (Couture Dep. 160:18-161:1.) Couture further stated that all the windows in the Metairie building had been repaired after Thanksgiving and that the building was functioning at full capacity, including the air conditioning. (*Id.* at 160:1-14.) Additionally, Plaintiff does not dispute that the Metairie office was repaired by December of 2005. Therefore, it is undisputed that the Period of Restoration ended in December of 2005 when operations at the Metairie office were restored. As a result, the Period of Restoration for RSUI's business interruption coverage lasted nearly four months, from August of 2005 to December of 2005.

Plaintiff's expert, Mark O'Rear, readily admits that his calculations for the seven failed

unidentified acquisitions were based on losses incurred over an eighteen month period following Hurricane Katrina.  (O'Rear Expert Report 7.)  This eighteen month period exceeds the four month Period of Restoration set forth in the Hartford insurance policy.  As a result, Plaintiff's losses for $5.1 million in the form of failed unidentified acquisitions are not covered under RSUI's policy because they fall outside the Period of Restoration.  *See Rogers v. American Ins. Co.*, 338 F.2d 240, 243 (8th Cir. 1964) ("'Plaintiff's recovery must be restricted to the loss of income that would have been earned during the reconstruction period, even though there may have been a substantial additional, but uninsured, loss consisting of reduction in income subsequent to the date of full restoration.'").  Additionally, Plaintiff's losses in the amount of $4.4 million for the lost income that allegedly would have been realized on the seven failed unidentified acquisitions and Plaintiff's losses in the amount of $3.7 million for the alleged property management fees on the seven failed unidentified acquisitions are beyond the four month Period of Restoration given that the seven failed unidentified acquisitions allegedly would have been acquired within the eighteen months following Hurricane Katrina.  Therefore, at least $13.2 million of Plaintiff's alleged $27.2 million claim for failed acquisitions is not covered by RSUI's policy.  Without deciding whether the remaining failed acquisition claims are covered under RSUI's insurance policy, the Court finds that RSUI is entitled to summary judgment because the $20 million liability limit underlying the RSUI policy will not be exhausted by Plaintiff's remaining failed acquisition claims.

## IV. CONCLUSION

No genuine issue of material fact exists as to whether $13.2 million of Plaintiff's failed acquisition claims falls outside the Period of Restoration for business interruption losses set forth in RSUI's policy.  As a result, RSUI is entitled to judgment as a matter of law because Plaintiff's

failed acquisition claims will not exhaust the $20 million liability limit underlying the RSUI policy.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on the "Failed Acquisition" Claim of MBS Management Services, Inc. (Rec. Doc. 191)** filed by Defendant RSUI Indemnity Company, Inc. is **GRANTED**.

This 23rd day of November 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

.