UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDE C. LIGHTFOOT, JR., substituted as Trustee of the Unsecured Creditors' Trust formed in connection with the bankruptcy of MBS | CIVIL ACTION |
| VERSUS | NO: 07-4833 |
| HARTFORD FIRE INSURANCE COMPANY, ET AL. | SECTION: "A" (3) |

### ORDER AND REASONS

Before the Court is a **Motion to Exclude Testimony from Defendant's Designated Expert, Anton Litchfield (Rec. Doc. 188)** filed by Plaintiff, Claude C. Lightfoot, Jr. ("Plaintiff"). Defendants, Hartford Fire Insurance Company ("Hartford")[1], Homeland Insurance Company ("Homeland"), RSUI Indemnity Company, Inc. ("RSUI"), and Wright & Percy Insurance Agency ("Wright & Percy") (collectively "Defendants") oppose the Motion.[2] The Motion, set for hearing on September 29, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is **GRANTED**.

### I. BACKGROUND

This matter arises out of an insurance dispute concerning coverage under several different

---

[1] At a mediation held on September 23, 2010, Plaintiff reached a settlement with Defendant Hartford. (*See* Rec. Doc. 207.)

[2] Homeland, RSUI, and Wright & Percy all adopt the reasons asserted by Hartford in its opposition.

1

insurance policies for losses incurred as a result of Hurricane Katrina. MBS Management Services, Inc. ("MBSMS") was a real estate company whose principal place of business was located in Metairie, Louisiana. (Compl. ¶¶ 1, 9.) MBSMS dealt mainly with multi-family residential apartment complexes. (*Id.* at ¶ 4.) MBSMS primarily generated income by purchasing properties, managing them for a period of time, and then selling them for a profit. (*Id.* at ¶ 9.)

Prior to Hurricane Katrina, MBSMS contacted a retail broker, Wright & Percy Insurance, a division of Bancorp South Insurance Services, Inc. ("Wright & Percy"), to procure insurance on its behalf. (*Id.* at ¶ 15.) Wright & Percy placed the insurance through another insurance broker, American E & S Insurance Brokers California, Inc. ("American E & S"), who secured insurance from Hartford, Homeland, and RSUI. (*Id.* at ¶¶ 16-17.) Three layers of insurance was obtained for MBSMS - a primary layer of $10,000,000 from Hartford, a secondary layer of $10,000,000 from Homeland, and a tertiary layer of $480,000,000 from RSUI. (*Id.* at ¶¶ 11-13.)

In late August of 2005, Hurricane Katrina struck and caused significant damage to MBSMS's Metairie office, resulting in considerable business interruption losses. (*Id.* at ¶¶ 19-22.) MBSMS notified Wright & Percy of its losses. (*Id.* at ¶ 22.) On September 8, 2005, Hartford was informed of MBSMS's insurance claim. (Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 3.) MBSMS made its premises available for inspection in late November of 2005. (*Id.*) However, after determining that the covered losses would not exceed the deductible on MBSMS's primary layer of insurance with Hartford, Brent Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, authorized Wright & Percy to tell Hartford "that the claim was being withdrawn." (Couture Dep. 90:5 - 91:12, Oct. 30, 2008.) In October of 2006, MBSMS contacted Wright & Percy to discuss the possibility of re-opening the claim.

(Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 3.)  On March 7, 2007, Wright & Percy requested Hartford to re-open MBSMS's claim for business loss interruption. (Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 3.)  Hartford contends that MBSMS did not provide any supporting documentation for its claim until mid-August of 2007. (*Id.* at 4.)

After Defendants indicated that they would not pay for MBSMS's business losses, MBSMS filed the instant suit in August of 2007 against Defendants.  (*See* Compl.)  The Complaint levels several charges against Defendants.  With regard to Hartford, Homeland, and RSUI, the Complaint claims that they wrongfully failed to pay MBSMS's claims for business income losses and extra expenses.  (*Id.* at ¶¶ 36-40.)   It also alleges that they breached the implied covenant of good faith and fair dealing and asserts bad faith claims pursuant to section 22:1892 (formerly section 22:658) and section 22:1973 (formerly section 22:1220) of the Louisiana Revised Statutes.  (*Id.* at ¶¶ 45-52.) Regarding Wright & Percy, the Complaint alleges that Wright & Percy failed to prosecute and process MBSMS's insurance claim, Wright & Percy retired MBSMS's insurance claim without authorization, and Wright & Percy colluded with the insurers to suppress MBSMS's insurance claims.  (*Id.* at ¶¶ 53-78.)  Plaintiff also contends that Wright & Percy is liable for "negligence, breach of contract, breach of fiduciary duty and misrepresentation" because it represented to MBSMS that MBSMS's claims did not exceed the policy deductibles, and because it failed "to procure adequate insurance coverage with sufficient limits to cover" all MBS entities. (*Id.* at ¶¶ 79-87.)  In its Answer, Hartford asserted several affirmative defenses, including MBSMS's failure to follow the notice and inspection provisions in the Hartford policy and spoilation of evidence. (Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 4.)   Homeland

adopted Hartford's affirmative defenses in its Answer and specifically asserted that MBSMS violated the Homeland policy by failing to file a proof of loss within ninety days of discovery of its loss.  (Homeland's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 1-2.)  Similarly, RSUI raised the affirmative defense that MBSMS violated the RSUI policy by failing to give RSUI immediate notice of its claim.  (RSUI's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 2.)  Subsequent to filing suit, MBSMS also filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff Claude C. Lightfoot, Jr., the trustee of the Unsecured Creditors' Trust established by MBSMS's bankruptcy plan, was substituted into this litigation for MBSMS as Plaintiff.  (*See Ex Parte* Consent Mot. to Substitute Party Pl.)

Throughout the course of discovery, Hartford retained Anton Litchfiled as an expert in information technology.  (Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 1.)  Mr. Litchfield is the current Vice President of the Data Forensics and Analytics Division at Encore Discovery Solutions ("Encore").  (Litchfield Expert Report 4.)  Mr. Litchfield initially was retained to examine computer data extracted from MBSMS's computers by other employees at Encore.  Based on his examination of the computer data, Mr. Litchfield seeks to offer the following five opinions: (1) Encore received data from MBSMS, which purported to contain all email files from the computers in MBSMS's possession; (2) there were few email files generated between 2004 and 2005; (3) there were no email files in Mr. Michael Smuck, Jr.'s ("Smuck, Jr.") mailbox during the years 2004 and 2005; (4) there was only one email file in Mr. Michael Smuck, Sr.'s ("Smuck, Sr.") mailbox between 2004 and 2005; and (5) during the period of 2004 and 2005, Mr. Smuck, Jr. and Mr. Smuck, Sr. were utilizing MBS email accounts.  (*Id.* at 2.)  Plaintiff concedes that there were no emails in the Smucks' mailboxes from 2004 through 2005.  (Pl.'s Mem.

4

Supp. Mot. to Exclude Testimony from Anton Litchfield 7.)  Plaintiff asserts that the reason no emails were found was because the Smucks never recovered their computers with the emails following Hurricane Katrina and because MBSMS did not have an email retention policy.  (*Id.*)

Plaintiff filed the instant motion to preclude the expert testimony of Anton Litchfield.  (*Id.* at 1.)  Plaintiff argues that Mr. Litchfield's opinions do not involve any expertise because there is no factual dispute regarding the lack of emails for the time period in question.  (*Id.* at 7.)  Plaintiff also contends that Mr. Litchfield's opinions lack expertise because his conclusions are based solely on a report generated by Mr. Jim Sheridan, the Senior Manager of Data Forensics and Analytics at Encore's New Jersey Office.  (Pl.'s Reply to Mot. to Exclude Testimony from Anton Litchfield 2.)  Plaintiff also asserts that Litchfield's opinions are irrelevant because MBSMS's lack of email retention between 2004 and 2005 has nothing to do with MBSMS's claim notification in 2007 and Defendants ability to inspect MBSMS's books and records in 2007.  (*Id.* at 3.)

Defendants oppose the motion, arguing that Mr. Litchfield's opinions qualify as expert opinion because ordinary lay people are unable to understand the type of analysis performed by Mr. Litchfield and Encore.  Defendants also assert that Mr. Litchfield's opinions are relevant to Defendants' defenses of MBSMS's non-compliance with the prompt notice provisions and the inspection of books and records provisions in Defendants' insurance policies.  (Hartford's Mem. Opp'n to Mot. to Exclude Testimony from Anton Litchfield 8.)  Defendants contend that MBSMS breached the insurance policy provisions by failing to retain emails prior to Katrina and post Katrina so that Defendants could evaluate the claim.  (*Id.*)  Defendants also argue that Mr. Litchfield's testimony is relevant to demonstrate spoilation of evidence.  (*Id.* at 9.)  Specifically, Defendants contend that MBSMS was aware of re-opening its business interruption claim in October of 2006,

but made no effort to retain emails during this time. (*Id.*) Even after the claim was re-opened in March of 2007, Defendants allege that hundreds of emails were destroyed given that no emails were found in the Smucks' mailboxes, and other employees had received emails from the Smucks during this time period. (*Id.*)

## II. DISCUSSION

### A. Applicable Law

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006). Rule 702 provides in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). In order for evidence to be admissible under *Daubert*, the evidence must be both reliable and relevant. *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999). The district court serves as a gatekeeper in determining the admissibility of expert testimony. *U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). The proponent of the expert testimony has the burden of proving that the proffered testimony is admissible. *Id.*

In *Daubert*, the Supreme Court articulated a number of nonexclusive factors that may be

relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see also Pipitone*, 288 F.3d at 244. These factors, however, "may or may not be pertinent in assessing reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire,* 526 U.S. at 150.

With regard to the reliability inquiry, Rule 703[3] of the Federal Rules of Evidence permits experts to rely on information that otherwise would not be admissible, including hearsay evidence so long as the information is of the type reasonably relied on by experts in his field. Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 94 (2d. Cir. 2000) ("[A]n expert may rely on data that [he] did not personally collect."); *Bryan v. John Bean Division FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978) ("The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties.").

Nevertheless, Rule 703 does not allow "the wholesale adoption of another expert's opinions

---

[3] Rule 703 provides in pertinent part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

without attempting to assess the validity of the opinions relied on." *Threet v. Correctional Health Care Mgmt of Okla., Inc.*, No. 07-843-HE, 2009 WL 3335596, at *5 (W.D. Okla. Oct. 15, 2009). In *Threet v. Correctional Health Care Management of Oklahoma, Inc.*, the court excluded the plaintiff's expert from testifying because the expert did not conduct any independent investigation and relied solely on a DOJ Report as the basis for some of his opinions. *Threet*, 2009 WL 3335596, at *5-6. Notwithstanding the expert's impressive credentials, the court concluded that the expert's opinions were inadmissible under *Daubert* because the expert lacked a reliable basis for his opinions. *Id.; see also TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) ("[T]he fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report.").

Likewise, in *JRL Enterprises v. Procorp Associates, Inc.*, Judge Fallon of the Eastern District of Louisiana precluded the plaintiff's expert from testifying because the expert failed to conduct any independent research to determine the reliability of his assumptions, and merely adopted figures calculated by another expert. *JRL Enters. v. Procorp Assocs., Inc.*, No. 01-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003). The court reasoned that the expert's testimony was inadmissible because the expert failed to demonstrate that the other expert's opinions and figures were reliable. *Id.* at *7-8; *see also In re TMI Litig.*, 193 F.3d 613, 715-16 (3d. Cir. 1999) (finding that the expert's methodology was flawed when he relied entirely on another expert's report). Similarly, in *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, Judge Wolfson of the District Court of New Jersey held that two of the proffered experts were not allowed to testify because they failed to conduct any independent investigation to refute the opinions offered by the plaintiff's experts. *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 627 F. Supp. 2d 384, 449-50 (D.N.J. 2009).

In addition to reliability, *Daubert* requires that expert testimony be relevant. *Daubert*, 509 U.S. at 589. Expert testimony is relevant under *Daubert* if it assists the trier of fact in understanding the evidence. *Id.* at 591.

**B. Analysis**

*1. Qualifications*

In determining the admissibility of Mr. Litchfield's testimony, the Court first must decide whether Mr. Litchfield is qualified to testify. Mr. Litchfield is a graduate of St. Lawrence College in Kingston, Ontario. (Litchfield Expert Report 4.) He received formal training in computer forensics from the Royal Canadian Mounted Police, the Ontario Provincial Police, New Technologies Inc., Guidance Software, and Paraben Software. (*Id.*) In addition, he worked for the Ontario Provincial Police as a computer forensics detective for four years. (*Id.*) He also spent six years working for New Technologies Inc. (now NTI Breakwater), where he provided computer forensic consulting services and computer forensic training. (*Id.*) Mr. Litchfield joined Encore in 2008 and currently serves as the Vice President of the Data Forensics and Analytics Division, where he offers litigation support in the area of computer forensics. (*Id.*) Furthermore, Mr. Litchfield has testified on computer evidence in various cases. (*Id.*) Based on his experience and training in computer forensics, the Court finds Mr. Litchfield is qualified in the area of computer forensics.

*2. Reliability*

The second line of inquiry focuses on the reliability of Mr. Litchfield's opinion. Notwithstanding Mr. Litchfield's credentials, the Court finds that Mr. Litchfield's opinions are unreliable under *Daubert* because he lacks a reliable basis for his opinions. In accord with *Threet*, *JRL Enterprises*, and *Bracco*, Mr. Litchfield failed to conduct any independent investigation of the

computer data submitted by Mr. Sheridan. Like in *Threet* and *TK-7 Corp.*, Mr. Litchfield relied solely on the report of a third party, Mr. Sheridan, in forming his conclusions. Mr. Litchfield agreed with Mr. Sheridan's report, but gave no indication as to why he agreed. Morever, as in *JRL Enterprises*, Mr. Litchfield failed to make any meaningful effort to determine the reliability of the email figures in the report or review how Mr. Sheridan extracted the computer data. As a result, there is no way for the Court to evaluate Mr. Sheridan's work especially when Mr. Sheridan's qualifications are unknown to the Court. In addition, Mr. Litchfield failed to apply his knowledge in computer forensics to the instant case. He failed to identify any principle or method of computer forensics that informed his opinions. Therefore, his theory cannot be tested, and the rate of error is unknown. Rather, Mr. Litchfield simply offered conclusions that Defendants seek to admit. Thus, the Court concludes that Mr. Litchfield's proffered testimony must be excluded because it does not meet the reliability standards under *Daubert*.

### *3. Relevance*

The Court, having found that Mr. Litchfield's opinions are unreliable, need not rule on the relevance of his proffered testimony.

## III. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion to Exclude Testimony from Defendant's Designated Expert, Anton Litchfield (Rec. Doc. 188)** filed by Plaintiff, Claude C. Lightfoot, Jr. is **GRANTED**.

This 3rd day of January, 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE