UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDE C. LIGHTFOOT, JR.,<br>substituted as Trustee of the Unsecured<br>Creditors' Trust formed in connection<br>with the bankruptcy of MBS | CIVIL ACTION |
| VERSUS | NO: 07-4833 |
| HARTFORD FIRE INSURANCE<br>COMPANY, ET AL. | SECTION: "A" (3) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment Based on the Insured's Failure to Exhaust the Primary Insurance Policy (Rec. Doc. 303)** filed by Defendant Homeland Insurance Company ("Homeland"). Plaintiff, Claude C. Lightfoot, Jr. ("Plaintiff"), opposes the motion. The motion, set for hearing on October 27, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **DENIED**.

## I. BACKGROUND

This matter arises out of an insurance dispute concerning coverage under several different insurance policies for losses incurred as a result of Hurricane Katrina. MBS Management Services, Inc. ("MBSMS") was a real estate company whose principal place of business was located in Metairie, Louisiana. (Compl. ¶¶ 1, 9.) MBSMS dealt mainly with multi-family residential apartment complexes. (*Id.* at ¶ 4.) MBSMS primarily generated income by purchasing properties, managing them for a period of time, and then selling them for a profit. (*Id.* at ¶ 9.)

Prior to Hurricane Katrina, MBSMS contacted a retail broker, Wright & Percy Insurance ("Wright & Percy"), a division of Bancorp South Insurance Services, Inc., to procure insurance on

1

its behalf. (Compl. at ¶ 15.) Wright & Percy placed the insurance through another insurance broker, American E & S Insurance Brokers California, Inc. ("American E & S"), who secured insurance from Hartford Fire Insurance Company ("Hartford"), Homeland, and RSUI Indemnity Company, Inc. ("RSUI"). (*Id.* at ¶¶ 16-17.) Three layers of insurance were obtained for MBSMS - a primary layer of $10,000,000 from Hartford, a secondary layer of $10,000,000 from Homeland, and a tertiary layer of $480,000,000 from RSUI. (*Id.* at ¶¶ 11-13.)

The Homeland policy is an excess insurance policy, which indemnifies MBSMS for its ultimate net loss in excess of an amount not less than the total sum of insurance provided by the underlying Hartford policy. (Excess of Loss Agreement of Indemnity Following Form Aggregate 1.) "Ultimate net loss" is defined under the policy as "actual loss sustained by the Insured as a direct result of the perils insured against by the policy(ies)." (*Id.* at 3.) The Homeland policy only applies "after all primary and other underlying insurance has been exhausted." (*Id.*)

In late August of 2005, Hurricane Katrina struck and caused significant damage to MBSMS's Metairie office, resulting in considerable business interruption losses. (Compl. at ¶¶ 19-22.) MBSMS notified Wright & Percy of its losses. (*Id.* at ¶ 22.) Brent Couture, MBSMS's Chief Financial Officer and Chief Operating Officer from 2003-2006, authorized Wright & Percy to tell Hartford "that the claim was being withdrawn" after determining that the covered losses would not exceed the deductible on MBSMS's primary layer of insurance with Hartford. (Couture Dep. 90:5 - 91:12, Oct. 30, 2008.) On March 7, 2007, Wright & Percy contacted Hartford to re-open MBSMS's claim for business loss interruption. (Compl. at Ex. A.) MBSMS then filed suit on August 28, 2007 against Wright & Percy, American E & S, Hartford, Homeland, and RSUI. (*See id.*) In particular, the Complaint alleges that Homeland wrongfully failed to pay MBSMS's claims for business income

losses and extra expenses.  (*Id.* at ¶¶ 36-40.)

Subsequent to filing suit, MBSMS also filed a voluntary petition for Chapter 11 bankruptcy, at which point Plaintiff Claude C. Lightfoot, Jr., the trustee of the Unsecured Creditors' Trust established by MBSMS's bankruptcy plan, was substituted into this litigation for MBSMS as Plaintiff.  (*See Ex Parte* Consent Mot. to Substitute Party Pl.)  At a mediation held on September 23, 2010, Plaintiff reached a settlement with Hartford for $2.5 million.  (Homeland's Mem. Supp. Mot. Summ. J. 1.)  As a result of that settlement, Homeland filed the instant motion for summary judgment, arguing that Plaintiff cannot recover under Homeland's insurance policy because the underlying layer of insurance by Hartford has not been exhausted given that the settlement figure was below Hartford's policy limits.  (*Id.*)  Plaintiff opposes the motion, arguing that Plaintiff's settlement with Hartford for less than the policy limits has no bearing on Homeland's legal responsibility under Louisiana law. (Pl.'s Mem. Opp'n. to Homeland's Mot. Summ. J. 4-7.)

## II.  **STANDARD OF REVIEW**

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  *Id.*

(citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

## III. DISCUSSION

Both parties agree that Louisiana law governs the interpretation of Homeland's insurance policy. The "[i]nterpretation of an insurance policy usually involves a legal question which can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, 08-2607, p. 4 (La. 5/22/09); 12 So. 3d 945, 949 (citing *Bonin v. Westport Ins. Corp.*, 05-886, p. 4 (La. 5/17/06); 930 So. 2d 906, 910). An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts under Louisiana law, "which requires judicial determination of the common intent of the parties to the contract." *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94); 630 So. 2d 759, 763; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580). "The parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have a technical meaning." *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 763. An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (quoting La. Rev. Stat. § 22:654 (2004)). An insurance contract should not be interpreted "in an unreasonable or strained manner under the guise of contractual

interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion." *Id. (*quoting *Cadwallader*, 848 So. 2d at 580). "If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written." *Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, 10-142, p. 5 (La. App. 3 Cir. 6/9/10); 41 So. 3d 1229, 1232 (citing La. Civ. Code. Art. 2046). Nevertheless, "[i]f any ambiguity remains after applying the general rules of contract interpretation, the ambiguous insurance policy provision is construed against the insurer." *Berry v. Paul Revere Life Ins. Co.*, 08-945, p.8-9 (La. 1 Cir. 7/9/09); 21 So. 3d 385, 390; *Westerfield v. LaFleur*, 493 So. 2d 600, 605 (La. 1986).

Several courts interpreting excess insurance policies under Louisiana law have held that an insured's settlement agreement with a primary insurer does not prevent recovery against the excess insurer. In *Futch v. Fidelity & Casualty Co. of New York*, the Supreme Court of Louisiana affirmed the appellate court's finding that the insured's settlement with the primary insurer did not preclude further recovery against the excess insurer. *Futch v. Fid. & Cas. Co. of New York*, 166 So. 2d 274, 278 (La. 1964). The excess insurer had argued that the insured's settlement with the primary insurer for $6,000 did not exhaust the primary policy limit of $10,000, thus failing to trigger the excess insurer's liability. *Id.* The Supreme Court of Louisiana reasoned that the insurer defendant's exhaustion argument lacked merit because the primary insurer had been credited with its total primary coverage and that the primary insurer's ability to settle its liability for less than the policy limits was of no consequence in determining the excess insurer's obligations. *Id.* Although the excess insurance policy was not conditioned on exhaustion like the policy in the instant case, the

Supreme Court did not base its decision on the lack of an exhaustion requirement in the excess insurance policy. *See id.* Rather, the Supreme Court grounded its decision on the fact that the primary insurer was credited with its total primary insurance. *Id.* Moreover, the appellate court in *Futch* noted that the excess insurer lacked "any real interest in the settlement effected." *Futch v. Fid. & Cas. Co. of New York*, 136 So. 2d 724, 727 (La. Ct. App. 1962). Likewise, in *Dukes v. Declouette, XYZ Insurance Co.*, the court found that the excess insurer had no interest in the settlement entered into between the insureds and the primary insurer given that the excess insurer was not a party to the settlement agreement and did not participate in settlement negotiations. *Dukes v. Declouette, XYZ Ins. Co.*, 10-45, p. 11 (La. App. 1 Cir. 6/11/10); 40 So. 3d 1231, 1238. As a result, the *Dukes* court concluded that the excess insurer could not benefit from the settlement between the insureds and the primary insurer. *Id.* Therefore, the court allowed the insureds to pursue a claim against the excess insurer notwithstanding their settlement with the primary insurer. *Id.*

Similarly, in *Gasquet v. Commercial Union Insurance Co.*, a case cited by Plaintiff, the court analyzed an excess insurance policy in order to determine whether the insured's settlement with the primary insurer precluded recovery against the excess insurer. *Gasquet v. Commercial Union Ins. Co.*, 391 So. 2d 466, 470-72 (La. Ct. App. 1980). Even though the policy provided that liability did not attach until the insured's underlying insurer "shall have paid the amount of the policy limits," the court held that the language of the excess policy did not bar the insured from recovering against the excess insurer. *Id.* at 472. The court, relying on *Futch*, reasoned that the excess insurer was not released from liability given that the underlying insurers had been credited for the full primary limits, and the insured had reserved the right to proceed against the excess insurer. *Id.* at 471-72.

As in *Futch*, the existence of an exhaustion requirement was of no significance to the court's holding. *See id.* Nevertheless, Homeland argues that *Gasquet* is distinguishable from the instant case given that the court relied on the Louisiana Direct Action Statute to supersede any exhaustion requirement in the excess insurance policy. (Homeland's Reply Mem. Supp. Mot. Summ. J. 7.) The Court finds that Homeland's interpretation of *Gasquet* is misplaced. Even though the *Gasquet* court cited the Louisiana Direct Action Statute in reaching its holding, the court also cited Louisiana jurisprudence as a basis for its holding and specifically referenced cases not involving the Louisiana Direct Action Statute. *See Gasquet*, 391 So. 2d at 471-72. Moreover, the court only referenced the Louisiana Direct Action Statute in order to demonstrate that an insured is not a necessary party to the action and to show that an excess insurer's liability is fixed at the time of the accident. *See id.* Thus, the court's references to the Louisiana Direct Action Statute do not make *Gasquet* inapposite from the instant case.

In accord with Louisiana jurisprudence, the Court finds that Homeland's excess insurance policy does not prevent Plaintiff from recovering against Homeland. In accord with *Futch* and *Gasquet*, Homeland is not excluded from liability because Hartford has been credited with its total primary coverage through its settlement with Plaintiff. Even though Plaintiff did not reserve the right specifically to proceed against Homeland in the settlement agreement as was done in *Futch* and *Gasquet*, Louisiana law does not require that a reservation of rights be included in a settlement agreement in order to protect the settling plaintiff's right to sue other non-settling parties. *See Dukes*, 40 So. 3d at 1235. Moreover, as in *Gasquet*, the exhaustion requirement in the Homeland policy is immaterial when the underlying insurer has been credited with the full amount of the underlying policy. Nevertheless, Homeland argues that *Futch* and *Gasquet* should not be followed

7

because those cases did not involve property insurance coverage. The Court does not find this reasoning persuasive given that courts outside of Louisiana have addressed similar issues under property insurance policies. *See Reliance Ins. Co. v. Transamerica Ins. Co.*, 826 So. 2d 998, 999-1000 (Fl. Dist. Ct. App. 2001) (rejecting the excess carrier's "exhaustion" argument on a property insurance policy for property damage incurred as a result of Hurricane Andrew). Additionally, like in *Futch* and *Dukes*, Homeland has no real interest in Plaintiff's settlement with Hartford given that it was not a party to the settlement and it was not involved in the settlement negotiations. Plaintiff's settlement with Hartford also had no effect on Homeland's insurance policy or its liability. Thus, Homeland cannot benefit from Plaintiff's settlement with Hartford. Based on Louisiana law, the Court rejects Homeland's exhaustion argument. Nevertheless, Homeland is only liable for the amount which exceeds the $10 million policy limit on the Hartford policy.

Notwithstanding Louisiana's excess policy jurisprudence, the Court also finds that the Homeland policy is ambiguous and susceptible to different meanings under *Berry* and *Westerfield*. First, the meaning of exhaust is unclear. Homeland argues that exhaust means actual payment of the policy limit by the underlying insurer. As support for this argument, Homeland cites the provision of the policy that conditions coverage on the insured maintaining underlying insurance within specified limits, which states that the condition "shall be in force and effect, except for reduction or exhaustion of these underlying aggregate limits solely by payment of covered losses by the underlying insurers during the policy year." The Court finds that this provision is ambiguous and that the insured's responsibility to maintain underlying coverage within specified limits has no bearing on whether the underlying policy must be paid in full by the underlying insurer as part of a settlement. Additionally, Homeland argues that the "Total Sums of Underlying Insurance

8

Limit(s)" provision supports its interpretation of exhaustion. The "Total Sums of Underlying Insurance Limit(s)" provision states that indemnity will not "attach at an amount less than each of these Total Sums, except in the event that the underlying aggregate limits of liability are reduced or exhausted by payments of covered losses by the underlying insurers during the policy year." As with the previous provision, the Court concludes that this provision is unclear except to suggest that the Homeland policy is an excess policy. Moreover, this provision does not require that the underlying policies be paid in full by the underlying insurers, nor does it prevent the underlying policies from being exhausted by payments from the underlying insurers in the form of settlements. Homeland also cites the Fifth Circuit's decision in *Service Corporation International v. Great American Insurance Co.* as support for its interpretation of the policy. In *Service Corporation International v. Great American Insurance Co.*, the Fifth Circuit, in applying Texas law, held that the primary insurer's settlement with the insured for less than the full policy limits did not trigger the excess insurer's obligation to pay for claims above the underlying policy limit. *Serv. Corp. Int'l v. Great American Ins. Co.*, 264 Fed. App'x. 431, 436 (5th Cir. 2008). Nevertheless, the Court finds that *Service Corporation International* is distinguishable from the instant case given that the Fifth Circuit applied Texas law and the excess insurance policy specifically referenced settlements unlike in the instant case. *See Serv. Corp. Int'l*, 264 Fed. App'x. at 433. Thus, the Court concludes that Homeland has failed to show that exhaust means actual payment of the policy limit by the underlying insurer.

Because the Homeland policy does not define exhaust nor explain how the underlying insurance can be exhausted, the Court finds that the Hartford policy may be exhausted in different ways. For example, the Hartford policy may have been exhausted when Plaintiff and Hartford

entered into a settlement agreement, whereby Hartford paid a percentage of the total limit and Plaintiff assumed responsibility for the remainder as was done in the instant case. Conversely, the Hartford policy may be exhausted when only Hartford makes payment of the full policy limit. Homeland could have used clear language in its policy defining how the policy was to be exhausted, but it did not, and now it must suffer the consequences of its ambiguity. Second, no where in the Homeland policy does it provide that the full limit of the policy must be paid out by Hartford alone. Given that the Homeland insurance policy is ambiguous, Louisiana law requires that we construe the Homeland policy in favor of Plaintiff, the insured.

The Court's interpretation of the Homeland policy also supports the policy of favoring out-of-court settlements. Homeland's interpretation of the policy would deter parties who have both primary and excess insurance from settling with their primary insurers. *See Zeig v. Massachusetts Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d. Cir. 1928) ("To require an absolute collection of the primary insurance to its full limit would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable."). As a result, an insured would be forced to litigate its claims with the primary insurer before seeking recourse against the excess insurer.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment Based on the Insured's Failure to Exhaust the Primary Insurance Policy (Rec. Doc. 303)** filed by Defendant Homeland Insurance Company is **DENIED**.

This 19th day of January 2011.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE