UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLAUDE C. LIGHTFOOT, JR., substituted as Trustee of the Unsecured Creditors' Trust formed in connection with the bankruptcy of MBS MANAGEMENT SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 07-4833** |
| **HARTFORD FIRE INSURANCE COMPANY, HOMELAND INSURANCE COMPANY OF NEW YORK, RSUI INDEMNITY COMPANY, AMERICAN E & S INSURANCE BROKERS NEW YORK, INC., and WRIGHT AND PERCY INSURANCE AGENCY, A DIVISION OF BANCORPSOUTH INSURANCE SERVICES, INC.** | **SECTION: G(3)** |

## ORDER AND REASONS

Before the Court is Defendant's Omnibus Motion in Limine, filed March 7, 2012.[1] Plaintiff filed its response on March 9, 2012,[2] and following leave of Court, Defendant filed its reply memorandum in further support of the Omnibus Motion in Limine on March 12, 2012.[3] On March 13, 2012, this Court requested further briefing from the parties.[4] Plaintiff and Defendant each timely

---

[1] Rec. Doc. 486.

[2] Rec. Doc. 493

[3] Rec. Doc. 501.

[4] Rec. Doc. 504 ("Considering that the Court has already ruled *as a matter of law* that coverage for business interruption losses under the insurance policy in question only extends to the named insured under the policy, [n. 1 Although Plaintiff avers that whether "MBS' operation as one company is not a theory, but a FACT" that should be decided by the jury, Rec. Doc. 493 at p. 3, the Court has already determined, as a matter of law, that only MBSMS, the named insured, was insured under the policy and that only MBSMS can recover for losses pursuant to the policy. *See* Rec. Doc. 313 at pp. 9-10, 14.] whether it is proper to allow a jury to hear evidence of the losses of entities not named on the insurance policy in a claim for business interruption losses where the allegation is that the other business operated as one with the insured.")

1

submitted the requested briefs,[5] and following leave of Court, Defendant filed a reply brief.[6]

Having considered the motion, the response, the reply, the additional briefings, the prior orders issued in this case, the Record, and the applicable law, for the following reasons, the Court will allow Plaintiff to present evidence, if it exists, to the jury regarding business interruption losses, including lost acquisition fees, that were directly sustained by MBS Management Services, Inc. ("MBSMS") but will disallow evidence of lost acquisition fees, earnings, profits, or other compensation that would have been paid directly to MBS Realty Investors, Ltd. ("MBSRI") or other entities and then transferred to MBSMS.

## I. Background

This case has a long and drawn-out history, with the majority of activity having occurred prior to the date on which the case was reassigned from Section "A", Judge Zainey, to Section "G" of this Court on October 7, 2011.[7] The case involves an insurance dispute regarding coverage under several different insurance policies for business interruption losses incurred as a result of Hurricane Katrina. The specific factual and procedural background of this case has been outlined previously, and the Court will refer the parties to prior orders issued in this case for a more complete recitation.[8] The remaining parties herein are Claude C. Lightfoot, Jr. ("Plaintiff"), as trustee of the Unsecured Creditors' Trust established by the bankruptcy plan of MBSMS, and Homeland Insurance Company

---

[5] Rec. Doc. 513 (Plaintiff) and Rec. Doc. 512 (Defendant).

[6] Rec. Doc. 522.

[7] Rec. Doc. 461.

[8] *See, e.g.,* Rec. Doc. 313.

2

("Defendant"), Plaintiff's excess insurer.[9]

When MBSMS's claims arose, MBSMS managed multi-family residential apartment complexes. MBSMS claims that it was also in the business of buying and selling these complexes for a profit through various companies operating as one with MBSMS; however, Defendant claims that companies related to MBSMS, including MBSRI, handled the buying and selling of the complexes and that MBSMS only managed the properties. The only entity named on the business interruption insurance policy is MBSMS. MBSMS filed an insurance claim, which included claims resulting from losses due to MBSRI's inability to buy and sell properties. Defendant disputed the claim, primarily on the basis that the claim included losses of entities not covered by the policy, and refused to pay it. As a result, Plaintiff filed this lawsuit on August 28, 2007.[10]

On October 13, 2010, Judge Zainey granted partial summary judgment in this case, finding that no genuine issue of material fact existed regarding whether entities other than MBSMS were insured under the Defendant's insurance policy.[11] Judge Zainey ruled, *as a matter of law*, that MBSRI, a company Plaintiff says "acted as one" with MBSMS,[12] was not covered by the insurance

---

[9] As an excess insurer, Defendant covers Plaintiff for losses that exceed Plaintiff's primary layer of insurance. Therefore, Defendant covers losses that exceed $10 million plus the applicable deductible. Defendant's policy follows the form of the first layer insurer's, Hartford Fire Insurance Company's, policy.

[10] Rec. Doc. 1.

[11] Rec. Doc. 313 at p. 14.

[12] *See, e.g., id.* at p. 3.

policy in question as a named insured,[13] additional insured,[14] or third party beneficiary.[15] He further stated that, pursuant to the policy, "MBSRI's reimbursements to MBSMS do not permit MBSMS to recover on behalf of MBSRI,"[16] and found that "MBSMS may not recover losses on behalf of MBSRI under [the insurers'] policies."[17] Accordingly, Judge Zainey ruled as a matter of law that damages sustained by affiliated entities are not covered under the insurance contract and that "Plaintiff may not recover for business interruption losses incurred by MBSRI or any other MBS entity other than MBSMS."[18]

Plaintiffs twice sought reconsideration of this order, once before Judge Zainey[19] and once before this section of the Court.[20] Both motions for reconsideration were denied.[21] However, Judge Zainey's June 8, 2011 order granting partial summary judgment provided that "[n]evertheless, Plaintiff is free to present evidence at trial of any business interruption losses sustained by MBSMS and the extent of that coverage."[22] The question now before the Court is whether Judge Zainey's

---

[13] *Id.* at pp. 8-9 ("Thus, the close relationship between MBSMS and MBSRI is not enough for Plaintiff to extend coverage from MBSMS to MBSRI.").

[14] *Id.* at pp. 9-10.

[15] *Id.* at p. 10.

[16] *Id.* at p. 9.

[17] *Id.* at p. 10.

[18] *Id.* at p. 14.

[19] Rec. Doc. 362.

[20] Rec. Doc. 473.

[21] Rec. Doc. 421 (denying motion to reconsider grant of summary judgment as to "failed acquisition" claims, which was granted partially on the basis that damages were incurred by an uninsured MBS entity); Rec. Doc. 484 (finding the standard for reconsideration not met).

[22] Rec. Doc. 421. at p. 14.

4

prior orders left open the question of whether Plaintiff can present evidence at trial of losses sustained by MBSRI that may have resulted in indirect, secondary losses for the named insured, MBSMS, by decreasing its gross earnings.

## II. Parties' Arguments and Analysis

In Defendant's Memorandum in Support of its Omnibus Motion in Limine,[23] Defendant requests this Court:

> preclude Plaintiff from introducing evidence of (1) Plaintiff's single entity theory that MBSMS and other related "MBS" entities should be treated as one consolidated entity, or that MBSMS may recover for losses of other "MBS" entities or resulting from a decline in the amounts of transfer of funds from other "MBS" entities to MBSMS.[24]

Defendant also requests the exclusion of other evidence, which this Court will address, as necessary, at a later time. In essence, Defendant argues that Plaintiff can only recover for "Actual Loss Sustained due to the necessary interruption of business operations" of MBSMS, and not for losses sustained by other entities.[25] In support of this argument and foreshadowing the arguments submitted in response to this Court's request for further briefing, Defendant relies upon previous rulings issued by Judge Zainey in this case to argue that the Court had already rejected the theory that MBSMS could recover for the losses of MBSRI because the two companies acted as one entity and that the Court had also already decided that any relationship between the different MBS companies is not

---

[23] Rec. Doc. 486-1.

[24] *Id.* at p. 1.

[25] *Id.* at p. 2.

5

enough to support coverage of losses incurred by MBSRI, rather than directly by MBSMS.[26]

In response to the Motion in Limine, Plaintiff argues that Defendant is "attempting to disguise factual issues that must be presented to the jury as [] issues to be decided by the Court."[27] Plaintiff further states that all business interruption losses were those of MBSMS because it was "***the only entity*** that had any operations whatsoever."[28] Therefore, Plaintiff's arguments again center upon the so-called "single entity" theory that Defendant asserts this Court has already rejected.[29] The Court notes that Plaintiff claims it does not have a "single entity" theory because "MBS' operation as one company is not a theory, but a **FACT**."[30]

Plaintiff misses the mark in that even if the question of whether MBS operated as a single company is a matter of fact, Plaintiff cannot escape the legal conclusion that entities other than MBSMS are not covered for losses under the policy. The Court previously ruled that Plaintiff may *not* recover for losses of other uninsured entities merely because of a close relationship between the entity and MBSMS.[31] The Court has repeatedly determined that Plaintiff may not present evidence regarding business interruption losses sustained by entities other than MBSMS. The only issue that possibly remains on this subject is whether MBSMS may recover for losses incurred by other entities that resulted in decreased gross earnings for MBSMS. It was on this issue that the Court requested

---

[26] *Id.* at p. 3.

[27] Rec. Doc. 493 at pp. 1-2.

[28] *Id.* at p. 2.

[29] *Id.* at p. 3.

[30] *See* Rec. Doc. 493 at p. 3.

[31] Rec Doc. 313 at pp. 7-10.

further briefing.

In response to the Court's question, Plaintiff cites cases from other circuits and law review articles as authority for "reverse piercing the corporate veil," wherein courts allow someone other than the insured to recover under a policy. Plaintiff cites these cases in support of its attempt to introduce as evidence losses of companies whose revenues flowed through to MSBMS, the only entity insured under the policy. Specifically, Plaintiff cites a Minnesota Supreme Court case,[32] in which the court disregarded the corporate form to allow a widow to recover benefits from an automobile insurance company when the named insured was the deceased husband's corporation, rather than the deceased husband. Plaintiff argues that reverse veil piercing is a proper action under Louisiana law.[33] However, just because Louisiana allows reverse veil piercing in some situations does not mean that it is warranted here. As Defendant notes, "Plaintiff cites no authority under which an insurance company becomes liable under an insurance contract for losses sustained by a non-insured entity simply because funds flowed through or were transferred to an insured entity."[34] In fact, as Defendant further notes, "Louisiana courts have rejected similar arguments in insurance cases, as this Court previously recognized."[35]

---

[32] *Roepke v. Western Nat'l Mutual Ins. Co.*, 302 N.W.2d 350 (S. Ct. Minn. 1981).

[33] For the proposition that Louisiana recognizes the doctrine of reverse veil piercing, Plaintiff cites *United States v. Newman*, 100 Fed. Appx. 958 (5th Cir. 2004), an unpublished Fifth Circuit opinion. In this case, the Fifth Circuit found that the district court did not abuse its discretion by reverse piercing the corporate veil in order to issue an injunction to prohibit disposal of corporate assets, so as to secure repayment of a personal restitution debt. The court noted that "Louisiana has long recognized and applied the doctrine of piercing the veil of single-shareholder, family, and other closely-held corporations to determine alter ego status, as well as the practice of disregarding the corporate form once alter ego status is determined." *Id.* at 958.

[34] Rec. Doc. 415 at p. 5.

[35] *Id.* (citing Rec. Doc. 313, at pp. 7-10 (reviewing cases where courts determined that "direct payments or reimbursement payments made by a party to an insurance provider do not create a right to recover under an insurance policy when the party is not a named insured or listed anywhere in the policy")).

Plaintiff has failed to demonstrate that such reverse piercing is warranted here, and the Minnesota Supreme Court case that Plaintiff states "clearly illustrate[s]" the situation here is inapposite, in addition to having no precedential value upon this Court and being in conflict with the Louisiana case law cited by Judge Zainey. Further, the Court finds these examples unpersuasive and inconsistent with the Rule of Law articulated by Judge Zainey in his earlier ruling, and articulated by this Court in its denial of reconsideration of that ruling, that "as a matter of law, based on the insurance policy and applicable law, [] only MBSMS can recover for losses under the policy."

Plaintiff argues that MBSMS received acquisition fees earned and collected by MBSRI and, therefore, the loss of these fees falls under the insurance policy's coverage for business interruption losses sustained by MBSMS.[36] Specifically, Plaintiff argues that there is a question of fact for the jury as to what constituted MBSMS' gross earnings over the period in which business was interrupted following Hurricane Katrina. Plaintiff states, "[b]ecause the insurance policy provides coverage for loss of gross earnings, evidence of MBSMS' gross earnings will play a substantial role in defining the business interruption losses the company sustained."[37] Plaintiff argues that fees collected by MBSRI should be presented to the jury and that the jury should be allowed to decide, as a matter of fact, whether those fees were part of MBSMS' gross earnings.

Plaintiff is correct that "the question of the amount of gross earnings lost as a result of interruption in business is a question of fact, not a question of law."[38] In calculating gross earnings

---

[36] Rec. Doc. 513 at p. 2 ("The fact is that all revenues either went to MBSMS for the acquisitions, management and disposition of the partnerships or money went to a company such as MBSRI and then flowed back to MBSMS. The business interrupted was that of MBSMS.").

[37] *Id.* at p. 5.

[38] *Id.*

8

and in defining the scope of MBSMS' business interruption losses, Plaintiff believes it is entitled to "include facts to support the compensation that MBSMS ordinarily would have received from MBSRI [presumably because it operated as one company with MBSMS] but for the interruption in business."[39] However, it is a matter of law whether the losses incurred by MBSRI and reflected as lost compensation to MBSMS are covered by the insurance policy.

Plaintiff's brief primarily argues, as Plaintiff argued in response to the Omnibus Motion in Limine and as Plaintiff has argued on multiple occasions, that the two companies operated as a single entity and, therefore, the losses of MBSRI were also those of MBSMS. As noted previously, Judge Zainey explicitly rejected this argument in finding that "the loan and exchange of money between MBSRI and MBSMS. . . is not sufficient to allow MBSMS to recover losses on behalf of MBSRI" and that "MBSRI's reimbursements to MBSMS do not permit MBSMS to recover on behalf of MBSRI."[40] Although Judge Zainey determined that Plaintiff was free to present evidence of damages sustained by MBSMS, Plaintiff now seeks, once again, to present evidence of losses sustained by MBSRI as proof of losses sustained by MBSMS, albeit indirectly, as decreases in MBSMS' gross earnings.

For this proposition, Plaintiff argues that the dictionary definition of "gross earnings" states that gross earnings are "[t]otal receipts of a person or business before deductions and expense."[41] Plaintiff claims, therefore, that these lost receipts constitute a decrease in gross income for MBSMS, which should be recoverable under the policy's business interruption provision. In contrast,

---

[39] *Id.* at p. 8.

[40] Rec. Doc. 313 at p. 9.

[41] Rec. Doc. 513 at p. 8 (citing Black's Law Dictionary (6th ed. 1990)).

Defendant points to specific language in the policy defining gross earnings:

> We will pay for the Actual Loss Sustained due to the necessary interruption of business operations caused by direct physical loss of or damage to property at premises (including business personal property within 1000' of the premises) for which applicable Business Interruption Limit of Insurance are stated in the Declarations, but not exceeding the reduction in Gross Earnings Less charges and expenses which do not necessarily continue during the Period of Restoration. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> Gross Earnings   Gross Earnings means the sum of:
> 1. The total net sales value of merchandise; and
> 2. Other income from business operations, less the following expenses to the extent they do not continue:
>    a. The net cost of merchandise sold, including packaging materials and transportation expenses; and
>    b. The cost of services purchased from vendors (not employees) which do not continue under contract.
>
> No other costs will be deducted in determining Gross Earnings.
>
> We will give due consideration to the experience of business operations before the date of covered loss or damage and what your probable experience would have been had there been no covered loss or damage.[42]

This Court is persuaded by Defendant's argument that the insurance policy covered only losses sustained due to the necessary interruption of the *insured's* business operations, because to hold otherwise would be to interpret the policy unreasonably,[43] and it is contrary to Louisiana law to interpret a policy "in an unreasonable or a strained manner."[44] Therefore, losses not sustained as a result of business interruption to *MBSMS* are not covered by the policy. Furthermore, the insurance policy specifically states that recoverable losses are not to exceed the reduction in gross earnings of the insured business; it does not state that it will necessarily cover up to the full value of *any*

---

[42] Rec Doc. 512-1 at p. 61, Hartford Policy, Business Interruption Coverage for Non-Manufacturers.

[43] If Plaintiff is correct, where would the line be drawn in situations where one's business is negatively affected by losses suffered by other entities who were not insured under a business interruption policy but contributed to the overall profits of the insured business?

[44] *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 193 (La. 2008).

10

reduction in gross earnings.

Plaintiff relies heavily on Judge Zainey's ruling in Defendant Homeland's Motion in Limine to Preclude Any Evidence of Alleged Loss of Acquisition Fees. In that order, issued on June 17, 2011 just prior to a previously scheduled trial, Judge Zainey denied Defendant's motion because the Court found, and stated in a two page order, "that issues of fact exist as to whether acquisition fees were paid to MBSMS."[45] However, Judge Zainey did not expound on this decision, nor did he provide his reasoning or analysis. Nevertheless, considering his prior rulings and the underlying authorities and analysis provided, when Judge Zainey denied Defendant's Motion in Limine to Preclude *Any* Evidence of Alleged Loss of Acquisition Fees, he apparently did so because he found that issues of fact existed as to whether acquisition fees were paid directly to MBSMS. Given his earlier ruling that MBSMS could not recover for losses sustained by MBSRI, he could only have been considering admitting evidence of acquisition fees paid directly to MBSMS, the only covered entity. Again, Plaintiff has not cited, and this Court has been unable to find, any authority in this Circuit to allow recovery for business interruption losses of entities not named in the insurance policy.

While the "measure of losses under a business interruption insurance policy" may be "a question of fact for the jury,"[46] this does not provide carte blanch to provide irrelevant and inadmissible evidence to the jury if it would only serve to confuse the jurors and could result in a verdict not supported by law. Defendant correctly notes that allowing Plaintiff to recover for indirect

---

[45] Rec. Doc. 345 at p. 2.

[46] Rec. Doc. 513 at p. 7 (citing *Consolidated Cos. v. Lexington Ins. Co.*, No. 06-4700, 2009 U.S. Dist. LEXIS 8542 (E.D. La. Jan. 23, 2009)).

losses that MBSMS allegedly sustained would be to allow Plaintiff to recover "for losses resulting from business operations that were never intended to be insured."[47] As Defendant also notes, Judge Zainey previously determined that it was undisputed that no person, on either side of the transaction, intended to buy or sell insurance coverage for MBSRI.[48] Therefore, business interruption losses regarding the buying and selling of properties, which was not a business function of MBSMS,[49] was solely an interruption in MBSRI's business, and Judge Zainey has already determined that MBSRI's losses were not covered by the insurance policy at issue here.

Therefore, although Plaintiff is correct in its position that deciding what constitutes "gross earnings" is an issue of fact for the jury, Plaintiff's argument is flawed in ignoring that the gross earnings are limited to those of MBSMS and that any losses felt by MBSMS *indirectly* due to business interruption or other losses incurred by entities not covered by the policy are inappropriate for consideration by a jury here *as a matter of law*. Those entities charging costs and passing the fees on to MBSMS are not covered by the policy at issue. Judge Zainey issued numerous rulings in this case, all of which indicated that MBSMS could only present evidence as to its own business losses, not the losses of MBSRI or some other entity. Although Judge Zainey previously stated that "issues of fact exist as to whether acquisition fees were paid to MBSMS,"[50] he could only have meant to leave open the door to evidence regarding lost acquisition fees paid directly to MBSMS.

By attempting to introduce evidence of losses of other entities whose fees flowed through

---

[47] *See* Rec. Doc. 512 at p. 12.

[48] *See id.* (citing Rec. Doc. 171 at pp. 9-10, 13; Rec Doc. 195-1 at pp. 17-18).

[49] In Chief Executive Officer Michael Smuck, Sr.'s corporate deposition, he did not list acquisition as part of MBSMS' business. *See* Rec Doc. 515-3 at p. 7.

[50] Rec. Doc. 435 at p. 2.

MBSMS because they acted as "one entity," Plaintiff now seeks to do indirectly what Judge Zainey previously ruled that it could not do directly – that is, seek damage for uncovered entities – and Plaintiff has cited no authority to indicate why this Court should allow it to end-run the orders previously issued in this case. Accordingly, at trial, MBSMS may only present evidence of losses sustained as a result of the necessary suspension of *its own* business operations, not those of MBSRI, and may only introduce evidence of direct losses suffered by MBSMS. Fees that merely would have been passed on to MBSMS cannot be included in computing the business interruption losses of MBSMS.

### III. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's Omnibus Motion in Limine is **GRANTED IN PART** to the extent that Plaintiff **MAY NOT PRESENT AT TRIAL** evidence as to any alleged business interruption losses that were not *directly* sustained by MBSMS. Any evidence as to losses sustained by MBSRI, even if indirectly sustained by MBSMS because it operated as one with MBSRI, will be precluded.

**IT IS FURTHER ORDERED** that a separate order will be forthcoming to address the other issues raised in Defendant's Omnibus Motion in Limine

**NEW ORLEANS, LOUISIANA**, this __20th__ day of March, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**