## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLAUDE C. LIGHTFOOT, JR., substituted as Trustee of the Unsecured Creditors' Trust formed in connection with the bankruptcy of MBS MANAGEMENT SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 07-4833** |
| **HARTFORD FIRE INSURANCE COMPANY, HOMELAND INSURANCE COMPANY OF NEW YORK, RSUI INDEMNITY COMPANY, AMERICAN E & S INSURANCE BROKERS NEW YORK, INC., and WRIGHT AND PERCY INSURANCE AGENCY, A DIVISION OF BANCORPSOUTH INSURANCE SERVICES, INC.** | **SECTION: G(3)** |

### ORDER AND REASONS

Before the Court is Defendant's Omnibus Motion in Limine, filed March 7, 2012.[1]  Plaintiff filed its response on March 9, 2012,[2] and following leave of Court, Defendant filed its reply memorandum in further support of the Omnibus Motion in Limine on March 12, 2012.[3]  The Court has previously granted in part the motion[4] but left unaddressed Defendant's second and third requests, in which Defendant seeks to have excluded references to a damages claim larger than that currently claimed by Plaintiff and in which Defendant seeks to have excluded any references that

---

[1] Rec. Doc. 486.

[2] Rec. Doc. 493

[3] Rec. Doc. 501.

[4] *See* Rec. Doc. 525 (granting Defendant's motion in part to the extent that Plaintiff would be precluded from presenting evidence of losses experienced by other MBS entities and precluded from presenting evidence of decreases in gross earnings for MBSMS caused by a decline in the transfer of funds from other MBS entities to MBSMS).

1

Defendant's failure to pay the insurance claim caused the destruction or bankruptcy of the company for whom Plaintiff serves as trustee.  Having considered the motion, the response, the reply, the prior orders issued in this case, the record, and the applicable law, for the following reasons, the Court will grant the remaining requests in Defendant's Omnibus Motion in Limine.

## I.  Background

This case has a long and drawn-out history, with the majority of activity having occurred prior to the date on which the case was reassigned from Section "A", Judge Zainey, to Section "G" of this Court on October 7, 2011.[5]  The case involves an insurance dispute regarding coverage under several different insurance policies for business interruption losses incurred as a result of Hurricane Katrina.  The specific factual and procedural background of this case has been outlined previously, and the Court will refer the parties to prior orders issued in this case for a more complete recitation.[6] The remaining parties herein are Claude C. Lightfoot, Jr. ("Plaintiff"), as trustee of the Unsecured Creditors' Trust established by the bankruptcy plan of MBS Management Services, Inc. ("MBSMS"), and Homeland Insurance Company ("Defendant"), Plaintiff's excess insurer.[7]

When MBSMS's claims arose, MBSMS managed multi-family residential apartment complexes.  MBSMS claims that it was also in the business of buying and selling these complexes for a profit through various companies operating as one with MBSMS; however, Defendant claims

_____

[5] Rec. Doc. 461.

[6] *See, e.g.,* Rec. Doc. 313.

[7] As an excess insurer, Defendant covers Plaintiff for losses that exceed Plaintiff's primary layer of insurance.

2

that companies related to MBSMS, including MBS Realty Investors, Ltd. ("MBSRI"), handled the buying and selling of the complexes and that MBSMS only managed the properties. The only entity named on the business interruption insurance policy is MBSMS. MBSMS filed an insurance claim, which included claims resulting from losses due to MBSRI's inability to buy and sell properties. Defendant disputed the claim, primarily on the basis that the claim included losses of entities not covered by the policy, and refused to pay it. As a result, Plaintiff filed this lawsuit on August 28, 2007.[8]

## II.  Parties' Arguments and Analysis

### A.  Introduction of Evidence Regarding the $27 Million Claim Submission

Defendant argues that Plaintiff should not be allowed to present evidence of the initial claim submitted in this matter, which was for $27 million. Defendant notes that this initial claim served as the basis for the Initial Report of Plaintiff's expert Mark O'Rear and that the Court has already found that expert report to be inadmissible because it contained damages incurred by MBS entities other than MBSMS.[9] Defendant argues that introduction of this evidence creates "substantial danger of misleading the jury that the initial claim has some validity when this Court has already ruled that the $27 million claim is improper as a matter of law."[10]

To this, Plaintiff responds that it "intends to introduce evidence at trial that [the] initial claim

---

[8] Rec. Doc. 1.

[9] Rec. Doc. 486-1 at p. 4 (citing Rec. Doc. 378).

[10] Id.

3

presented to the insurers represents the business interruption losses sustained by MBSMS."[11]  This

evidence, the Court now knows, includes losses of other entities.  However, as recently as yesterday,

this Court determined that Plaintiff has no legal basis to claim damages incurred by entities other

than MBSMS.[12]  Therefore, this $27 million claim includes damages that are inadmissible at trial.

The Court previously ruled the initial expert report irrelevant because it contained inadmissible

damage claims,[13] and it would be inappropriate to now allow Plaintiff to introduce or refer to the

claim submission that formed the very basis for excluding the report.  Additionally, to the extent that

a claim submission that cannot support an award of damages is even relevant, Federal Rule of

Evidence Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially
> outweighed by a danger of one or more of the following: unfair prejudice, confusing
> the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
> cumulative evidence.

The Court is inclined to agree with Defendant that allowing the jury to hear this inflated figure,

which includes damages for which Plaintiff cannot, as a matter of law, recover, would be prejudicial

to Defendant and would be confusing and misleading for the jury.  The Court will not allow Plaintiff

to introduce or refer to the $27 million claim submission, except to state that a written claim was

provided to the insurers on or about December 5, 2007.[14]

---

[11] Rec. Doc. 493 at p. 6.

[12] *See* Rec. Doc. 525.

[13] "The Court concludes that Mr. O'Rear's testimony is irrelevant because his damage calculations are not specific to MBSMS.  Rather, Mr. O'Rear's calculations account for the damages incurred by the MBS entities as a whole.  Nevertheless, the Court has ruled that MBSMS is the only insured entity . . . ."  Rec Doc. 378 at p. 6.

[14] Defendant has agreed to stipulate to this fact.  Rec. Doc. 486-1 at p. 4.

4

**B.   Statements that Defendant's Failure to Pay the Insurance Claim Caused the Destruction of MBSMS**

Next, Defendant argues that Plaintiff must not be allowed to present evidence that Defendant's failure to pay the insurance claim resulted in the MBS companies' destruction or bankruptcy.[15]   Defendant argues that the Court's prior rulings make such evidence irrelevant and prejudicial,[16] given that consequential damages for bad faith under Louisiana law are no longer available as a result of the Court's prior rulings.[17]   Defendant also asserts that the timeline of events makes it factually impossible that Defendant's refusal to pay the insurance claim caused the destruction and bankruptcy of the MBS entities.[18]

Plaintiff provides nothing to indicate that such evidence might be relevant to any remaining cause of action or available damages.  Instead, Plaintiff responds that "[c]ounsel for the plaintiff does not intend to make any such arguments at trial.  However, it is possible that principals at MBSMS believed this to be true . . . .  The witnesses should be allowed to testify as to what the[y] though[t] . . . ."[19]

A fact is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[20]   However,

---

[15] Rec. Doc. 486-1 at p. 5.

[16] *Id.*

[17] *See* Rec. Doc. 357.  "Under Louisiana law, an insurance company is liable for statutory penalties . . . for failure to pay insurance claims in good faith."  *Id.* (citations omitted).

[18] Rec. Doc. 486-1 at p. 5.

[19] Rec. Doc. 493 at p. 7.

[20] Fed. R. Evid. 401.

Plaintiff has not demonstrated any possible relevance of the effect of the failure to pay the insurance claim on the destruction and bankruptcy of MBSMS.  The Court has already ruled that there can be no claim for consequential damages for bad faith under Louisiana law,[21] and Plaintiff has pointed to no alternative reason this information might be relevant.  Without some possible relevance, the information is inadmissible.  Furthermore, the Court finds that it may even be prejudicial to submit this information to the jury.  Accordingly, any references to the possible effect of the failure to pay the insurance claim on the destruction and bankruptcy of MBSMS is inadmissible.  This is the case whether Plaintiff seeks to refer to this information through counsel or through witnesses, and the Court will not allow such testimony.  Because the Court has determined that such information is irrelevant and potentially prejudicial, it need not consider Defendant's argument that there exists no factual basis to allow testimony regarding Defendant's role in MBSMS's destruction and bankruptcy.

### III.  Conclusion

For the reasons set forth above and for the reasons set forth in this Court's previous order regarding the Omnibus Motion in Limine,[22]

**IT IS HEREBY ORDERED** that Defendant's Omnibus Motion in Limine is **GRANTED** and Plaintiff will be precluded from introducing the following at trial:

> (1) Plaintiff's "single entity" theory that MBSMS and other related "MBS" entities should be treated as one consolidated entity, or that MBSMS may recover for losses of other "MBS" entities or resulting from a decline in the amounts of transfers of funds from other "MBS" entities to MBSMS;
> (2) any reference to any claim for damages in an amount more than either the $12.1

---

[21] Rec. Doc. 357.

[22] Rec. Doc. 525.

million or $15.6 million that Plaintiff's expert currently opines is the loss incurred by MBSMS; and

(3) any reference that the insurers' failure to pay the insurance claim caused the destruction or bankruptcy of MBSMS or any other "MBS" entity.[23]


**NEW ORLEANS, LOUISIANA**, this  21st   day of March, 2012.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[23] Rec. Doc. 486.

7